STATE OF MAINE
CUMBERLAND, ss.

CONTINENTAL WESTERN
INSURANCE CO.,

    Plaintiff,

v.

GEORGE BEAM, FEDERAL
INSURANCE CO., and
FRANKENMUTH MUTUAL
INSURANCE CO.,

    Defendants.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2018-530

ORDER ON PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT REGARDING
INDEMNITY OBLIGATIONS OF
FEDERAL INSURANCE
COMPANY AND
FRANKENMUTH MUTUAL
INSURANCE COMPANY

Before the Court is Plaintiff Continental Western Insurance Company's ("Continental") Motion for Summary Judgment Regarding Indemnity Obligations of Federal Insurance Company ("Federal") and Frankenmuth Mutual Insurance Company ("Frankenmuth"). For the following reasons, the Court denies Continental's motion.

## I. Background

This action arises out of a personal injury action brought by George Beam against Auburn Plaza, Inc. ("Auburn") in the Maine Superior Court in Androscoggin County, captioned *Beam v. Auburn Plaza, Inc.*, Docket No. CV-18-67 (the "Underlying Action"). (Continental's Supp'g S.M.F. ¶ 1.) In the Underlying Action, Mr. Beam alleged that he was injured when he fell through a skylight on the roof of the Auburn Mall (the "Accident") while working for his employer, Atlantic Comfort Systems, Inc. ("Atlantic"). (Continental's Supp'g S.M.F. ¶¶ 10-12.) Mr. Beam had entered the roof to repair an HVAC system that serviced General Nutrition Corporation ("GNC"), a tenant at the mall. (Continental's Supp'g S.M.F. ¶ 11.) Mr. Beam had completed his work on GNC's HVAC

unit before the Accident and was not near GNC's HVAC unit when the Accident occurred.[1] (Federal's S.M.F. ¶¶ 21, 23-24.)[2]

Continental initiated this action to determine coverage obligations owed to Auburn by Federal and Frankenmuth. (Continental's Supp'g S.M.F. ¶ 2.) The Underlying Action has since settled for $1,200,000. (Continental's Supp'g S.M.F. ¶ 9.) Continental and Federal each contributed $400,000 to the settlement of the Underlying Action, reserving their rights to seek reimbursement from each other and Frankenmuth. (Continental's Supp'g S.M.F. ¶ 62.)

There are three insurance policies at issue in this action that were in effect at the time of the Accident: (1) a commercial general liability policy issued by Continental, under which Auburn was insured (the "Continental Policy"); (2) a commercial general liability policy issued by Federal, under which GNC was insured (the "Federal Policy"); and (3) a commercial general liability policy issued by Frankenmuth, under which Atlantic was insured (the "Frankenmuth Policy"). (Continental's Supp'g S.M.F. ¶¶ 46, 48, 54.)

Continental has moved for summary judgment on the issue of Federal and Frankenmuth's duties to indemnify Auburn, on the theory that Auburn was an additional insured under the Frankenmuth Policy and the Federal Policy. Continental argues that Frankenmuth is obligated to reimburse Continental for the costs Continental incurred to defend Auburn in the Underlying Action and is responsible for the remaining

---

[1] Federal cites portions of the deposition testimony of Mark Tuller, President and CEO of Atlantic, in which Mr. Tuller explains his theories on Mr. Beam's path of travel and intentions after completing work on GNC's HVAC unit. See Federal's S.M.F. ¶¶ 21-23, 25. In that testimony, however, Mr. Tuller admits that he was speculating and that he does not have personal knowledge of either issue. The Court will not consider those portions of the record on summary judgment.

[2] Federal incorporated its Statement of Material Facts supporting Federal's Motion for Summary Judgment as its Additional Statement of Material Facts opposing Continental's Motion for Summary Judgment. Citations to Federal's Statement of Material Facts herein refer to Federal's Statement of Material Facts supporting Federal's Motion for Summary Judgment.

settlement payment owed to Mr. Beam. In the alternative, Continental argues that Federal is responsible for those same amounts.

## A. The Frankenmuth Policy

The Frankenmuth Policy, issued to Atlantic, contains an additional insured endorsement that provides:

> Section II—Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

(Continental's Supp'g S.M.F. ¶ 49.)

Atlantic had entered into a general service agreement with Facility Source (the "Service Agreement"). (Continental's Supp'g S.M.F. ¶ 34.) On January 1, 2015, Facility Source hired Atlantic to perform work on GNC's HVAC unit at the Auburn Mall. (Continental's Supp'g S.M.F. ¶ 36.) The January 1, 2015 work order (the "Work Order") required Atlantic to be insured.[3] (Continental's Supp'g S.M.F. ¶ 37; Frankenmuth's Resp. to Continental's Supp'g S.M.F. ¶ 37.)

Before Atlantic could perform work for GNC, it was required to produce a Certificate of Insurance for both Facility Source and Auburn. (Continental's Supp'g S.M.F. ¶¶ 34-35; 67.) Atlantic provided Auburn with a Certificate of Insurance in 2015.

---

[3] Frankenmuth properly controverted Continental's statement to the extent that Continental asserted that the Work Order required Atlantic to add Auburn as an additional insured.

(Continental's Supp'g S.M.F. ¶ 44.) Atlantic had previously provided Certificates of Insurance to Auburn, indicating that Auburn was an additional insured. (Continental's Supp'g S.M.F. ¶ 38; Federal's Resp. to Continental's Supp'g S.M.F. ¶ 38.) If Atlantic had not provided Auburn with a Certificate of Insurance identifying Auburn as an additional insured, Auburn would not have allowed Mr. Beam onto the roof. (Continental's Supp'g S.M.F. ¶ 45.) Frankenmuth and Continental dispute whether Atlantic specifically agreed to add Auburn as an additional insured to the Frankenmuth Policy. (Continental's Supp'g S.M.F. ¶ 43; Frankenmuth's Resp. to Continental's Supp'g S.M.F. ¶ 43.)

## B. The Federal Policy

The Federal Policy, issued to GNC, contains an additional insured provision that provides, in relevant part:

> Persons or organizations from whom you lease premises are insureds, but they are insureds only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.
>
> However, no such person or organization is an insured with respect to any:
>
> • Damages arising out of their sole negligence;
>
> • Occurrence that occurs, or offense that is committed, after you cease to be a tenant in the premises; or
>
> • Structural alteration, new construction or demolition performed by or on behalf of them.

(Continental's Supp'g S.M.F. ¶ 47.)

GNC leased its premises at the Auburn Mall from Auburn. (Continental's Supp'g S.M.F. ¶ 31.) Section 10.2(B) of GNC's Lease Agreement (the "Lease") provides, in relevant part:

> [GNC's] obligations shall include, without limitation, repairing, maintaining, and making replacement to items such as the following located within or serving the Leased Premises: . . . heating, ventilating and

air-conditioning equipment and systems (whether such heating, ventilating and air-conditioning equipment and systems are located inside the Leased Premises or on the roof of the Shopping Center) which are installed by [GNC] or which exclusively serve the Leased Premises.

(Continental's Supp'g S.M.F. ¶ 32; Continental's Ex. 6 at 40.)

Section 8.3 of the Lease requires GNC to maintain commercial general liability insurance applicable to the Lease Premises and its appurtenances. (Continental's Supp'g S.M.F. ¶ 33; Continental's Ex. 6 at 37.) Section 8.4 of the Lease provides, in relevant part, "Tenant shall carry and maintain, at its expense, or Tenant shall require any contractor performing work on the Leased Premises to carry and maintain, at no expense to Landlord . . . Commercial General Liability Insurance . . . ." (Continental's Supp'g S.M.F. ¶ 33; Continental's Ex. 6 at 37.) Section 8.5 of the Lease states: "All policies evidencing Tenant's insurance shall specify Tenant, Landlord (and any designees of Landlord as the interest of such designees shall appear) as additional insureds." (Continental's Supp'g S.M.F. ¶ 33; Continental's Ex. 6 at 37.)

The Federal Policy included a self-insured retention of $250,000 (the "SIR"). (Federal's S.M.F. ¶ 12.) The SIR provided that the named insured, GNC was solely liable for satisfying the retention. (Federal's S.M.F. ¶ 13.) On or about June 23, 2020, GNC and GNC Holdings, Inc. filed for bankruptcy. (Federal's S.M.F. ¶ 28.) The SIR has not been satisfied with respect to the Accident. (Federal's S.M.F. ¶ 29.) The Federal Policy also contains the following language: "Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance." (Federal's S.M.F. ¶ 34.)

## II.    Legal Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is

no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is "material" if it could affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if a factfinder must "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

The court considers the record in the light most favorable to the party objecting to the grant of summary judgment. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646; *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). To controvert an opposing party's statement of fact, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

"If the language of an insurance policy is unambiguous, we interpret it in accordance with its plain meaning, but we construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder." *Concord Gen. Mut. Ins. Co. v. Est. of Boure*, 2021 ME 57, ¶ 15, 263 A.3d 167 (quoting *Haskell v. State Farm Fire & Cas. Co.*, 2020 ME 88, ¶ 15, 236 A.3d 458). "An insurance contract is ambiguous if it is reasonably susceptible of different interpretations from the perspective of an average person untrained in either the law or the insurance field in light of what a more than

casual reading of the policy would reveal to an ordinarily intelligent insured." *Bibeau v. Concord Gen. Mut. Ins. Co.*, 2021 ME 4, ¶ 12, 244 A.3d 712 (citations and quotation marks omitted).

The Court will address Continental's motion with regards to each of the defendants separately, beginning with Frankenmuth.

## A. Frankenmuth

As described above, the Frankenmuth Policy covers as an additional insured: "[A]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured." Frankenmuth argues that neither of the conditions of the additional insured endorsement—first, the "performing operations" condition and, second, the "agreed in writing" condition—are met with respect to Auburn.

Regarding the first condition, the language requires that the named insured, Atlantic, be performing operations for Auburn. The undisputed facts demonstrate that Mr. Beam, on behalf of Atlantic, was performing operations pursuant to the Work Order issued by Facility Source for GNC at the time of the Accident. There is no evidence in the record of a service agreement between Auburn and Facility Source. However, the Lease requires GNC to maintain the HVAC unit. The language of the endorsement does not necessarily exclude operations that indirectly benefit the named insured. Construing the facts in the light most favorable to Frankenmuth—but construing the language of the endorsement strictly against Frankenmuth—the first condition is arguably met.

The second condition presents a greater hurdle for Continental. There is no Maine law interpreting this language, and other jurisdictions that have addressed it are split.

Frankenmuth and Continental focus much of their arguments on *Pro Con, Inc. v. Interstate Fire and Casualty Co.*, 794 F. Supp. 2d 242 (D. Me. 2011).[4]

Pro Con, Inc. ("Pro Con") was the general contractor for a construction project. *Id.* at 245. Pro Con hired a subcontractor, Canatal Industries, Inc. ("Canatal") who in turn hired a subcontractor, CCS Constructors, LLC ("CCS"). *Id.* at 245-46. The Canatal-CCS subcontract provided: "[Canatal], the General Contractor [Pro Con] and the Owner and other entities as may be reasonably requested are to be included as additional insured under the Commercial General Liability insurance policies as well as under Umbrella Excess Liability." *Id.* at 246 (alterations in original). Analyzing an additional insured provision identical to the provision in the Frankenmuth Policy, the United States District Court for the District of Maine held that the "agreed in writing" condition was satisfied by the Canatal-CCS subcontract, rendering Pro Con an additional insured under an insurance policy issued to CCS, even though Pro Con was not a party to the Canatal-CCS subcontract. *Id.* at 250-53.

The Court finds *Pro Con* unpersuasive for two reasons: (1) the Court disagrees with the Maine District Court's interpretation of the additional insured provision, and (2) even if the Court did agree with *Pro Con*, the facts of this case are distinguishable.

First, the Maine District Court focused its analysis on the language "in writing in a contract or agreement," and concluded that the purported additional insured need not be a party to the writing. To require a written agreement between the named insured and

---

[4] Continental also cites cases analyzing language such as "written contract, agreement or permit." *See, e.g., Superior Ice Rink, Inc. v. Nescon Contracting Corp.*, 861 N.Y.S.2d 362, 365 (N.Y. App. Div. 2008). The Court agrees that this language is ambiguous because it is unclear whether "written" modifies agreement and permit in addition to contract. These cases are not helpful to deciding the matter at hand, however, because the provision in the Frankenmuth policy unambiguously requires a writing.

the additional insured, the Maine District Court reasoned, the policy should have read "...agreed in writing in a contract or agreement *with you*." *Id.* at 251.

That interpretation overlooks the context of that language, which reads "any person or organization . . . *when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured.*" This Court interprets the additional insured provision of the Frankenmuth Policy as unambiguously requiring a written agreement between Atlantic and Auburn to add Auburn as an additional insured. *See State Auto Prop. & Cas. Ins. Co. v. Kin, Inc.*, 588 F. Supp. 3d 870, 875 (N.D. Ill. 2022) (concluding that the language "when you and such person or organization have agreed in a written contract or written agreement" required direct privity of contract between named insured and additional insured); *Westfield Ins. Co. v. FCL Builders, Inc.*, 948 N.E.2d 115, 118 (Ill. App. Ct. 2011) ("The plain and ordinary meaning of the term 'such person or organization' in this provision is that it refers back to the same person or organization for whom [the named insured] is performing operations, which was mentioned earlier in the same provision, and it does not encompass any other entity."). No such writing exists.

Second, even if the Court agreed that the endorsement does not require direct privity between the named and additional insured, there is no written agreement in this record between any parties to add Auburn as an additional insured. In *Pro Con*, the CCS-Canatal subcontract specifically required CCS to add the general contractor, Pro Con, to its policy. The facts of this case would be analogous to those of *Pro Con* if the Service Agreement or the Work Order between Atlantic and Facility Source specifically required Atlantic to add Auburn as an additional insured to the Frankenmuth Policy. Neither document requires Atlantic to add Auburn to the Frankenmuth Policy.

Nor does the Certificate of Insurance listing Auburn as an additional insured satisfy the writing requirement, as Continental argues. The Certificate of Insurance specifically states that it is not a contract and that it does not confer any rights on the certificate holder or amend the Frankenmuth Policy. (Continental's Ex. 10.) It cannot, therefore, constitute an agreement in writing that such person or organization be added as an additional insured. *See FCL Builders, Inc.*, 948 N.E.2d at 120-21 (a party cannot rely on a certificate of insurance to establish that it is an additional insured); *cf. Combined Mgmt., Inc. v. Reliance Nat'l Ins. Co.*, No. CV-96-101, 1996 Me. Super. LEXIS 393, at *15 (Dec. 9, 1996) ("A general rule of insurance law states that 'a certificate of insurance is not a contract of insurance but is merely the evidence that a contract has been issued,' and that the validity of any certificate actually provided therefore 'is conditioned upon the issuance and existence of a policy.'" (quoting *Am. Hardware Mut. Ins. Co. v. BIM, Inc.*, 885 F.2d 132, 139 (4th Cir. 1989))); *10 Ellicott Square Ct. Corp. v. Mt. Valley Indem. Co.*, 634 F.3d 112, 122 (2d Cir. 2010) (New York law provides that a certificate of insurance is not a contract to insure).

Continental has failed to demonstrate that it is entitled to judgment as a matter of law on the issue of whether Auburn is an additional insured under the Frankenmuth Policy.

## B. Federal

Continental argues that Auburn is an additional insured under the Federal Policy and that the Continental Policy is excess over the Federal Policy. Federal argues: (1) that Auburn is not an additional insured; (2) that even if Auburn is an additional insured, the Federal Policy and the Continental Policy both provide primary coverage; and (3) that coverage was never triggered because the SIR was not satisfied or, in the alternative, that Federal has already paid the amount of the loss exceeding the SIR.

### i. Additional Insured

The additional insured provision of the Federal Policy reads, in relevant part:

> Persons or organizations from whom you lease premises are insureds, but they are insureds only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

The undisputed facts establish that GNC leased premises from Auburn and that the Lease required GNC to add Auburn as an additional insured to its commercial general liability policy for the Leased Premises. The dispute centers on whether the language "with respect to the ownership, maintenance or use" of the Leased Premises encompasses damages related to the Accident.[5] Continental argues that Auburn is an additional insured because Mr. Beam was injured while on the roof to repair the HVAC unit that served the Leased Premises, which GNC was obligated to maintain under the Lease.

This specific language has not been interpreted by the Law Court in the context of a landlord's claim under a tenant's insurance policy, nor extensively discussed elsewhere. In *American Policyholders' Insurance Company v. Kyes*, 483 A.2d 337, 340-41 (Me. 1984), the Law Court interpreted an insurance policy that provided coverage for the individual business owner "but only with respect to conduct of a business." *Id.* at 340. The Law Court interpreted the language as covering accidents that are "business-related." *Id.* at 341.

Similarly, the plain meaning of the phrase "with respect to the ownership, maintenance or use," suggests that the damages must be related to the ownership,

---

[5] Continental also addresses the immediately following portion of the additional insured provision, which reads: "However, no such person or organization is an insured with respect to any: Damages arising out of their sole negligence . . . ." Continental argues that the Accident was caused at least in part by Atlantic's or Mr. Beam's negligence, in addition to Auburn's negligence. Ordinarily, a dispute on this point would prevent the Court from granting summary judgment. Federal, however, apparently concedes this issue, having failed to address this language in their opposition to Continental's motion or in Federal's own motion for summary judgment.

maintenance, or use of the Leased Premises.[6] *See id.* It does not, as Federal argues, limit coverage to damages that are solely and directly caused by GNC's ownership, maintenance, or use of the Leased Premises. *See Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 2 Cal. Rptr. 3d 18, 25 (Cal. Ct. App. 2003) ("[N]othing in the meaning of 'only with respect to' hints at a requirement of direct causation. Looking at the plain meaning of the questioned phrase, we find definitions indicating that 'only with respect to' merely indicates some relationship.").

Nor does the additional insured provision limit coverage to damages that occurred inside the physical bounds of the Leased Premises. The fact that the Accident occurred outside of the Leased Premises is not dispositive.[7] If Federal intended such a narrow construction, it should have used narrower language.

Next, Federal argues that coverage does not exist because Mr. Beam had completed the repairs to GNC's HVAC unit before the Accident occurred. "[W]ith respect to . . . maintenance" encompasses more than active performance of maintenance work. Navigating the roof after completing repairs to an HVAC unit is reasonably related in time and purpose to the maintenance work that Mr. Beam entered the roof to perform on GNC's behalf.

Finally, Federal argues that Mr. Beam was not on the roof for the sole purpose of repairing GNC's HVAC unit. Although Federal speculates about other HVAC units that Mr. Beam may have thought he had to repair, there is no competent evidence in this record to support this theory. It is undisputed that Mr. Beam had been invited to the

---

[6] Federal and Continental seem to view the language "with respect to" as interchangeable with "with respect to liability arising from." In the Court's view, the two are similar, but not identical in plain meaning.
[7] Federal relies on *Greater N.Y. Mut. Ins. Co v. Liberty Mut. Ins. Co.*, No. 01-cv-10632 (JKF), 2003 U.S. Dist. LEXIS 16332, at *11-15 (S.D.N.Y. Sept. 17, 2003), in which that court concluded that a landlord was not covered as an additional insured because the accident did not occur within the leased premises, as defined in the lease. The Court does not find this case, which rests on that court's interpretation of New York law, persuasive.

Auburn Mall on GNC's behalf to repair its HVAC unit on the roof and that he did, in fact, repair GNC's HVAC unit. The record demonstrates an adequate causal connection between the maintenance of GNC's HVAC unit and the Accident. Once again, the language of the additional insured provision is not as narrow as Federal argues.

## ii. Priority of Coverage

Having determined that Auburn is an additional insured under the Federal Policy with respect to the Accident, the Court must now determine the priority of coverage. The Federal Policy's "Other Insurance" provision states:

*Primary Insurance*

This insurance is primary except where the Excess Insurance provision described below applies.

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in the Method of Sharing provision described below.

*Excess Insurance*

This insurance is excess over any other insurance, whether primary, excess, contingent, or on any other basis:

A. That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for your work;

B. That is insurance that applies to property damage to premises rented to you or temporarily occupied by you with permission of the owners;

C. If the loss arises out of aircraft, autos or watercraft (to the extent not subject to the Aircraft, Autos or Watercraft exclusion);

D. That is insurance:

> 1. Provided to you by any person or organization working under contract or agreement with you; or
>
> 2. Under which you are included as an insured; or

E. That is insurance under any Property section of this policy.

(Continental Supp'g S.M.F. ¶ 52.)

As excerpted above, the Other Insurance provision of the Federal Policy enumerates several scenarios in which it provides excess coverage. None of the enumerated scenarios in the Other Insurance provision of the Federal Policy apply.[8] The Federal Policy, therefore, provides primary coverage.

The Continental Policy provides that its coverage is primary, except that it is excess over "[a]ny other primary, excess or contingent insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement." (Continental Supp'g S.M.F. ¶ 55.) Federal argues that this provision is not applicable because Auburn is an insured by operation of the definition of "Who Is An Insured" within the Federal Policy, not by attachment of an endorsement.

The Court agrees that the plain and unambiguous language of the Continental Policy's Excess Insurance provision is limited to policies that add additional insureds specifically by means of an endorsement. *See Graphic Arts Mut. Ins. Co. v. Essex Ins. Co.*, 465 F. Supp. 2d 1290, 1294-95 (N.D. Ga. 2006) (holding that plain language of substantively identical provision required adding an additional insured by means of an endorsement); *Wright-Ryan Constr., Inc. v. AIG Ins. Co.*, 647 F.3d 411, 416 (1st Cir. 2011) (interpreting a materially identical provision as requiring the policy at issue to be treated as excess over other insurance for which the named insured had been added as an additional insured by means of an endorsement). Accordingly, the Continental Policy also provides primary coverage.

---

[8] Federal does not dispute this.

### iii. The SIR

Federal argues that coverage has not been triggered because the SIR has not been and will not be satisfied.[9] Other courts have compared a self-insured retention to primary insurance and the coverage available after a self-insured retention is satisfied to excess insurance. *See Forecast Homes, Inc. v. Steadfast Ins. Co.*, 105 Cal. Rptr. 3d 200, 206 (Cal. Ct. App. 2010). Generally, a self-insured retention must be satisfied before coverage is triggered. *See id.* Self-insured retentions, as distinguished from deductibles, apply to defense costs and settlements, rather than only damages. *Id.*

Continental argues that the self-insured retention applies only to the named insured because the language regarding the SIR refers to "you," which is defined as the named insured. Continental neglects other language in the SIR provision, which also states that "[t]his insurance applies to amounts in excess of Self-Insured Retentions" and that "[w]e have no obligation or liability unless and until the Self-Insured Retentions are exhausted by payments you make. . . ." (Federal's Ex. 1 at 2.) Although liability for the SIR is limited to the named insured, the applicability of the Self-Insured Retention is not limited to claims brought by the named insured.

The Court is not aware of any jurisdiction that would require an insurer to indemnify an additional insured for the full amount of the loss, including the amount of an unpaid self-insured retention, as Continental proposes. Some courts, however, have held that when the named insured is insolvent, the additional insured is still entitled to coverage to the extent that the loss exceeds the amount of the SIR. *See, e.g., Rosciti v. Ins. Co. of Pa.*, 659 F.3d 92, 98-99 (1st Cir. 2011). Those courts have rested their decisions on the presence in the policy of what is commonly referred to as a bankruptcy clause, state

---

[9] In the alternative, Federal argues that it has already satisfied its coverage obligations in excess of the SIR, as will be discussed below.

statute, public policy, or a combination of the foregoing.[10] *See id.* (public policy of Rhode Island); *Admiral Ins. Co. v. Grace Indus., Inc.,* 409 B.R. 275, 281-82 (Bankr. E.D.N.Y. 2009) (bankruptcy clause mandated by New York statute); *Home Ins. Co. v. Hooper,* 691 N.E.2d 65, 69-70 (Ill. App. Ct. 1998) (bankruptcy clause mandated by Illinois statute).

Maine law does not mandate inclusion of a bankruptcy clause. Nevertheless, the Federal Policy contains a standard bankruptcy clause, which reads: "Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance."

The language of the bankruptcy clause seemingly conflicts with the language of the SIR. This conflict creates an ambiguity. Reading the two clauses together, an ordinarily intelligent insured could reasonably understand either (1) that Federal was obligated to provide coverage to an additional insured even if the named insured is insolvent and unable to satisfy the SIR, or (2) that Federal's coverage obligations are triggered only by exhaustion of the SIR, regardless of whether the named insured is insolvent (as Federal argues).

Maine law would resolve this ambiguity to further the purpose of indemnification. *See Est. of Boure,* 2021 ME 57, ¶ 15, 263 A.3d 167. The Court concludes that Federal is obligated to indemnify Auburn to the extent that its loss exceeds the SIR, even though GNC has not and will not be able to exhaust the SIR. *See Pinnacle Pines Cmty. Ass'n v. Everest Nat'l Ins. Co.,* No. CV-12-08202-PCT-DGC, 2014 U.S. Dist. LEXIS 65011, at *12-15 (D. Ariz. May 9, 2014) (holding that, even in the absence of clear public policy, a standard bankruptcy clause obligated insurer to indemnify despite insured's inability to pay the

---

[10] A bankruptcy clause provides that an insured's insolvency does not relieve the insurer of its obligations under the policy. Some states have mandated inclusion of a bankruptcy clause by statute. It is now standard practice among insurers nationwide to include a bankruptcy clause. *Rosciti,* 659 F.3d at 98.

SIR); *In re Fed. Press Co.*, 104 B.R. 56, 62 (Bankr. N.D. Ind. 1989) (concluding that a conflicting self-insured retention clause and a bankruptcy clause created ambiguity, which the court resolved in favor of finding an obligation to indemnify); *Sturgill v. Beach at Mason Ltd. P'ship*, No. 1:14cv0784 (WOB), 2015 U.S. Dist. LEXIS 142490, at *10 (S.D. Ohio Oct. 20, 2015) (holding that presence of bankruptcy clause, even though not required by state statute, obligated insurer to provide coverage regardless of satisfaction of the SIR by insolvent insured).

### iv. Apportionment

Finally, having determined that Auburn is an additional insured under the Federal Policy, that the Federal Policy and the Continental Policy provide co-primary coverage, and that Federal is obligated to indemnify for loss exceeding the $250,000 SIR, the Court must apportion the remaining loss. $400,000 of the settlement remains to be apportioned.

The Continental Policy provides for the following method of sharing:

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.

> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

(Continental's Supp'g S.M.F. ¶ 57.) The Federal Policy contains a substantively identical provision regarding the method of sharing. (Continental's Supp'g S.M.F. ¶¶ 51, 53.)

The Federal Policy and the Continental Policy each have a per occurrence limit of $1,000,000. (Continental's Supp'g S.M.F. ¶¶ 58, 59.) Federal and Continental have already contributed $400,000 each to the settlement of the Underlying Action. Continental and Federal would each be required to contribute $200,000 in addition to the amounts they've already contributed, subject to the SIR of the Federal Policy.

As discussed above, Federal is only obligated to indemnify Auburn for amounts exceeding $250,000, which is more than the remaining amount that Federal would otherwise be required to contribute. Federal has therefore already met and exceeded its obligation.

Because Federal is not obligated to contribute any additional amount towards the underlying settlement, Continental's motion for summary judgment as to Federal must be denied.

## IV. Conclusion

For the foregoing reasons, the Court denies Continental's motion.

The entry is:

Plaintiff Continental Western Insurance Company's Motion for Summary Judgment Regarding Indemnity Obligations of Federal Insurance Company and Frankenmuth Mutual Insurance Company is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _April 3, 2023_

_MaryGay Kennedy, Justice_
Maine Superior Court

CONTINENTAL WESTERN
INSURANCE CO.,

        Plaintiff,

      v.

GEORGE BEAM, FEDERAL
INSURANCE CO., and
FRANKENMUTH MUTUAL
INSURANCE CO.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT
FEDERAL INSURANCE
COMPANY'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court is Defendant Federal Insurance Company's Motion for Summary Judgment. For the following reasons, the Court grants Federal's motion in part.

## I.    Background

On February 18, 2015, Mr. Beam, an employee of Atlantic Comfort Services ("Atlantic"), was injured when he fell through a skylight on the roof of the Auburn Mall (the "Accident"). (Federal's Supp'g S.M.F. ¶ 17.) Mr. Beam has no memory of the Accident. (Federal's Supp'g S.M.F. ¶ 26.) Mr. Beam sued Auburn Plaza, Inc. ("Auburn") for damages arising from the Accident (the "Underlying Action"). (Federal's Supp'g S.M.F. ¶ 27.) At the time, Auburn was the named insured on a policy issued by Continental (the "Continental Policy"). (Federal's Supp'g S.M.F. ¶ 14.)

On the day of the Accident, Mr. Beam was at the Auburn Mall to perform services on tenants' HVAC units, including GNC's HVAC unit on the roof. (Federal's Supp'g S.M.F. ¶ 18.) GNC leased premises from Auburn at all relevant times. (Federal's Supp'g S.M.F. ¶¶ 1, 2.) GNC's lease (the "Lease") defined the space leased to GNC as follows:

[T]he "cross-hatched" space indicated on the lease plan attached as Exhibit A, having a front footage of approximately twenty (20) linear feet and six (6) inches, a depth of approximately ninety (90) linear feet and containing a total floor space of approximately one thousand eight hundred forty-five (1,845) square feet.

(Federal's Supp'g S.M.F. ¶ 3.)

Under Section 4.6B of the Lease,

If the Leased Premises are located immediately under the roof of the Shopping Center, then Tenant is hereby given a non-exclusive right to use that part of the roof of the building in which the Leased Premises are located within the lines formed by projecting the perimeter wall lines of the Leased Premises vertically, such use being solely for the installation and maintenance of Tenant's heating, ventilating and air conditioning system, if any . . .

(Federal's Supp'g S.M.F. ¶ 4.) Pursuant to the Lease, GNC was responsible for:

"repairing, maintaining and making replacements to items such as the following located within or serving the Leased Premises: . . . heating, ventilating and air conditioning equipment and systems (whether such heating, ventilating and air conditioning equipment and systems are located inside the Leased Premises or on the roof of the Shopping Center) which are installed by Tenant or which exclusively serve the Leased Premises . . ."

(Federal's Supp'g S.M.F. ¶ 5.)

GNC's HVAC unit was located directly above GNC's store. (Federal's Supp'g S.M.F. ¶ 20.) Mr. Beam had completed his work on GNC's HVAC unit before the Accident. (Federal's Supp'g S.M.F. ¶ 21.) Mr. Beam was neither above GNC nor near GNC's HVAC unit when the Accident occurred.[1] (Federal's Supp'g S.M.F. ¶¶ 23-24.)

The Lease required GNC to obtain commercial general liability insurance "applicable to the Leased Premises and its appurtenances . . . ." that covered Auburn as

---

[1] Federal cites portions of the deposition testimony of Mark Tuller, President and CEO of Atlantic, in which Mr. Tuller explains his theories on Mr. Beam's path of travel and intentions after completing work on GNC's HVAC unit. *See* Federal's Supp'g S.M.F. ¶¶ 21-23, 25. In that testimony, however, Mr. Tuller admits that he was speculating and that he does not have personal knowledge of either issue. The Court will not consider those portions of the record on summary judgment.

an additional insured. (Federal's Supp'g S.M.F. ¶¶ 6-7.) Pursuant to the commercial general liability policy issued by Federal to GNC (the "Federal Policy"), "Lessors of Premises" are insureds under the Federal Policy, as follows:

> Persons or organizations from whom you lease premises are insureds, but they are insureds only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.
>
> However, no such person or organization is an insured with respect to any:
>
> • Damages arising out of their sole negligence;
>
> • Occurrence that occurs, or offense that is committed, after you cease to be a tenant in the premises; or
>
> • Structural alteration, new construction or demolition performed by or on behalf of them.

(Federal's Supp'g S.M.F. ¶ 8.) The Federal Policy defines the term "you" as GNC. (Continental's Add'l S.M.F. ¶ 33.) The Federal Policy did not have any endorsement which added Auburn to the Federal Policy as an additional insured. (Federal's Supp'g S.M.F. ¶ 9.)

Federal and Continental entered into a settlement agreement with Mr. Beam in the Underlying Action for $1,200,000. (Federal's Supp'g S.M.F. ¶ 30.) Continental and Federal each contributed $400,000 towards the settlement and retained their rights to seek reimbursement of the settlement amount from each other and Defendant Frankenmuth Mutual Insurance Company. (Federal's Supp'g S.M.F. ¶ 32.)

On or about June 23, 2020, GNC and GNC Holdings, Inc. filed for bankruptcy. (Federal's Supp'g S.M.F. ¶ 28.) The Federal Policy contains the following language: "Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance." (Federal's Supp'g S.M.F. ¶ 34.) The Federal Policy included a self-insured retention of $250,000 ("the SIR"). (Federal's Supp'g S.M.F. ¶ 12.)

The SIR provided that the named insured, GNC, was solely liable for satisfying the retention. (Federal's Supp'g S.M.F. ¶ 13.) The SIR has not been satisfied with respect to the Accident. (Federal's Supp'g S.M.F. ¶ 29.)

Federal requests that the Court enter summary judgment in its favor and against Continental on the issue of Federal's indemnity obligations and order Continental to reimburse Federal for sums it expended towards defense and settlement of the Underlying Action.

## II. Legal Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is "material" if it could affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if a factfinder must "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

The court considers the record in the light most favorable to the party objecting to the grant of summary judgment. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646; *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). To controvert an opposing party's statement of fact, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make

a factual determination without speculating." *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

"If the language of an insurance policy is unambiguous, we interpret it in accordance with its plain meaning, but we construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder." *Concord Gen. Mut. Ins. Co. v. Est. of Boure*, 2021 ME 57, ¶ 15, 263 A.3d 167 (quoting *Haskell v. State Farm Fire & Cas. Co.*, 2020 ME 88, ¶ 15, 236 A.3d 458). "An insurance contract is ambiguous if it is reasonably susceptible of different interpretations from the perspective of an average person untrained in either the law or the insurance field in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Bibeau v. Concord Gen. Mut. Ins. Co.*, 2021 ME 4, ¶ 12, 244 A.3d 712 (citations and quotation marks omitted).

Federal argues: (1) that Auburn is not an additional insured; (2) that even if Auburn is an additional insured, the Federal Policy and the Continental Policy both provide primary coverage; and (3) that coverage was never triggered because the SIR was not satisfied or, in the alternative, that Federal has already paid the amount of the loss exceeding the SIR. In essence, Federal argues that it either is not obligated to indemnify Auburn or has already satisfied its obligation.

### A. Additional Insured

The additional insured provision of the Federal Policy reads, in relevant part:

> Persons or organizations from whom you lease premises are insureds, but they are insureds only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

The undisputed facts establish that GNC leased premises from Auburn and that the Lease required GNC to add Auburn as an additional insured to its commercial general liability policy for the Leased Premises. The dispute centers on whether the language "they are insureds only with respect to the ownership, maintenance or use of that particular part of such premises leased to you" encompasses damages related to the Accident.[2] Continental argues that Auburn is an additional insured because Mr. Beam was injured while on the roof to repair the HVAC unit that served the Leased Premises, which GNC was obligated to maintain under the Lease.

This specific language has not been interpreted by the Law Court in the context of a landlord's claim under a tenant's insurance policy, nor extensively discussed elsewhere. In *American Policyholders' Insurance Company v. Kyes*, 483 A.2d 337, 340-41 (Me. 1984), the Law Court interpreted an insurance policy that provided coverage for the individual business owner "but only with respect to conduct of a business." *Id.* at 340. The Law Court interpreted the language as covering accidents that are "business-related." *Id.* at 341.

Similarly, the plain meaning of the phrase "with respect to the ownership, maintenance or use," suggests that the damages must be related to the ownership, maintenance, or use of the Leased Premises.[3] *See id.* It does not, as Federal argues, limit coverage to damages that are solely and directly caused by GNC's ownership, maintenance, or use of the Leased Premises. *See Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 2 Cal. Rptr. 3d 18, 25 (Cal. Ct. App. 2003) ("[N]othing in the meaning of 'only with

---

[2] Continental also addresses the immediately following portion of the additional insured provision, which reads: "However, no such person or organization is an insured with respect to any: Damages arising out of their sole negligence . . . ." Continental argues that the Accident was caused at least in part by Atlantic's or Mr. Beam's negligence, in addition to Auburn's negligence. Ordinarily, a dispute on this point would prevent the Court from granting summary judgment. Federal, however, apparently concedes this issue, having failed to address this language in their opposition to Continental's motion or in Federal's own motion for summary judgment.

[3] Federal and Continental seem to view the language "with respect to" as interchangeable with "with respect to liability arising from." In the Court's view, the two are similar, but not identical in plain meaning.

respect to' hints at a requirement of direct causation. Looking at the plain meaning of the questioned phrase, we find definitions indicating that 'only with respect to' merely indicates some relationship.").

Nor does the additional insured provision limit coverage to damages that occurred inside the physical bounds of the Leased Premises. The fact that the Accident occurred outside of the Leased Premises is not dispositive.[4] If Federal intended such a narrow construction, it should have used narrower language.

Next, Federal argues that coverage does not exist because Mr. Beam had completed the repairs to GNC's HVAC unit before the Accident occurred. "[W]ith respect to . . . maintenance" encompasses more than active performance of maintenance work. Navigating the roof after completing repairs to an HVAC unit is reasonably related in time and purpose to the maintenance work that Mr. Beam entered the roof to perform on GNC's behalf.

Finally, Federal argues that Mr. Beam was not on the roof for the sole purpose of repairing GNC's HVAC unit. Although Federal speculates about other HVAC units that Mr. Beam may have thought he had to repair, there is no competent evidence in this record to support this theory. It is undisputed that Mr. Beam had been invited to the Auburn Mall on GNC's behalf to repair its HVAC unit on the roof and that he did, in fact, repair GNC's HVAC unit. The record demonstrates an adequate causal connection between the maintenance of GNC's HVAC unit and the Accident. Once again, the language of the additional insured provision is not as narrow as Federal argues.

---

[4] Federal relies on *Greater N.Y. Mut. Ins. Co v. Liberty Mut. Ins. Co.*, No. 01-cv-10632 (JKF), 2003 U.S. Dist. LEXIS 16332, at *11-15 (S.D.N.Y. Sept. 17, 2003), in which that court concluded that a landlord was not covered as an additional insured because the accident did not occur within the leased premises, as defined in the lease. The Court does not find this case, which rests on that court's interpretation of New York law, persuasive.

## B. Priority of Coverage

Having determined that Auburn is an additional insured under the Federal Policy with respect to the Accident, the Court must now determine the priority of coverage. The Federal Policy's "Other Insurance" provision states:

*Primary Insurance*

This insurance is primary except where the Excess Insurance provision described below applies.

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in the Method of Sharing provision described below.

*Excess Insurance*

This insurance is excess over any other insurance, whether primary, excess, contingent, or on any other basis:

A. That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for your work;

B. That is insurance that applies to property damage to premises rented to you or temporarily occupied by you with permission of the owners;

C. If the loss arises out of aircraft, autos or watercraft (to the extent not subject to the Aircraft, Autos or Watercraft exclusion);

D. That is insurance:

    1. Provided to you by any person or organization working under contract or agreement with you; or

    2. Under which you are included as an insured; or

E. That is insurance under any Property section of this policy.

(Federal's Supp'g S.M.F. ¶ 10.)

As excerpted above, the Other Insurance provision of the Federal Policy enumerates several scenarios in which it provides excess coverage. None of the

enumerated scenarios in the Other Insurance provision apply.[5] The Federal Policy, therefore, provides primary coverage.

The Continental Policy provides that its coverage is primary, except that it is excess over "[a]ny other primary, excess or contingent insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement." (Federal's Supp'g S.M.F. ¶ 15.) Federal argues that this is not applicable because Auburn is an insured by operation of the definition of "Who Is An Insured" within the Federal Policy, not by attachment of an endorsement.

The Court agrees that the plain and unambiguous language of the Continental Policy's Excess Insurance provision is limited to polices that add additional insureds specifically by means of an endorsement. *See Graphic Arts Mut. Ins. Co. v. Essex Ins. Co.*, 465 F. Supp. 2d 1290, 1294-95 (N.D. Ga. 2006) (holding that plain language of substantively identical provision required adding an additional insured by means of an endorsement); *Wright-Ryan Constr., Inc. v. AIG Ins. Co.*, 647 F.3d 411, 416 (1st Cir. 2011) (interpreting a materially identical provision as requiring the policy at issue to be treated as excess over other insurance for which the named insured had been added as an additional insured by means of an endorsement). Accordingly, the Continental Policy also provides primary coverage.

## C. The SIR

Next, Federal argues that coverage has not been triggered because the SIR has not been and will not be satisfied.[6] Other courts have compared a self-insured retention to

---

[5] Federal does not dispute this.
[6] In the alternative, Federal argues that it has already satisfied its coverage obligations in excess of the SIR, as will be discussed below.

primary insurance and the coverage available after a self-insured retention is satisfied to excess insurance. *See Forecast Homes, Inc. v. Steadfast Ins. Co.*, 105 Cal. Rptr. 3d 200, 206 (Cal. Ct. App. 2010). Generally, a self-insured retention must be satisfied before coverage is triggered. *See id.* Self-insured retentions, as distinguished from deductibles, apply to defense costs and settlements, rather than only damages. *Id.*

Continental argues that the self-insured retention applies only to the named insured because the language regarding the SIR refers to "you," which is defined as the named insured. Continental neglects other language in the SIR provision, which also states that "[t]his insurance applies to amounts in excess of Self-Insured Retentions" and that "[w]e have no obligation or liability unless and until the Self-Insured Retentions are exhausted by payments you make. . . ." (Federal's Ex. 1 at 2.) Although liability for the SIR is limited to the named insured, the applicability of the Self-Insured Retention is not limited to claims brought by the named insured.

The Court is not aware of any jurisdiction that would require an insurer to indemnify an additional insured for the full amount of the loss, including the amount of an unpaid self-insured retention, as Continental proposes. Some courts, however, have held that when the named insured is insolvent, the additional insured is still entitled to coverage to the extent that the loss exceeds the amount of the SIR. *See, e.g., Rosciti v. Ins. Co. of Pa.*, 659 F.3d 92, 98-99 (1st Cir. 2011). Those courts have rested their decisions on the presence in the policy of what is commonly referred to as a bankruptcy clause, state statute, public policy, or a combination of the foregoing.[7] *See id.* (public policy of Rhode Island); *Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275, 281-82 (Bankr. E.D.N.Y. 2009)

---

[7] A bankruptcy clause provides that an insured's insolvency does not relieve the insurer of its obligations under the policy. Some states have mandated inclusion of a bankruptcy clause by statute. It is now standard practice among insurers nationwide to include a bankruptcy clause. *Rosciti*, 659 F.3d at 98.

(bankruptcy clause mandated by New York statute); *Home Ins. Co. v. Hooper*, 691 N.E.2d 65, 69-70 (Ill. App. Ct. 1998) (bankruptcy clause mandated by Illinois statute).

Maine law does not mandate inclusion of a bankruptcy clause. Nevertheless, the Federal Policy contains a standard bankruptcy clause, which reads: "Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance."

The language of the bankruptcy clause seemingly conflicts with the language of the SIR. This conflict creates an ambiguity. Reading the two clauses together, an ordinarily intelligent insured could reasonably understand either (1) that Federal was obligated to provide coverage to an additional insured even if the named insured is insolvent and unable to satisfy the SIR, or (2) that Federal's coverage obligations are triggered only by exhaustion of the SIR, regardless of whether the named insured is insolvent (as Federal argues).

Maine law would resolve this ambiguity to further the purpose of indemnification. *See Est. of Boure*, 2021 ME 57, ¶ 15, 263 A.3d 167. The Court concludes that Federal is obligated to indemnify Auburn to the extent that its loss exceeds the SIR, even though GNC has not and will not be able to exhaust the SIR. *See Pinnacle Pines Cmty. Ass'n v. Everest Nat'l Ins. Co.*, No. CV-12-08202-PCT-DGC, 2014 U.S. Dist. LEXIS 65011, at *12-15 (D. Ariz. May 9, 2014) (holding that, even in the absence of clear public policy, a standard bankruptcy clause obligated insurer to indemnify despite insured's inability to pay the SIR); *In re Fed. Press Co.*, 104 B.R. 56, 62 (Bankr. N.D. Ind. 1989) (concluding that a conflicting self-insured retention clause and a bankruptcy clause created ambiguity, which the court resolved in favor of finding an obligation to indemnify); *Sturgill v. Beach at Mason Ltd. P'ship*, No. 1:14cv0784 (WOB), 2015 U.S. Dist. LEXIS 142490, at *10 (S.D. Ohio Oct. 20, 2015) (holding that presence of bankruptcy clause, even though not required

by state statute, obligated insurer to provide coverage regardless of satisfaction of the SIR by insolvent insured).

## D. Apportionment

Finally, having determined that Auburn is an additional insured under the Federal Policy, that the Federal Policy and the Continental Policy provide co-primary coverage, and that Federal is obligated to indemnify for loss exceeding the $250,000 SIR, the Court must apportion the remaining loss. $400,000 of the settlement remains to be apportioned.

The Continental Policy provides for the following the method of sharing:

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.

> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

(Federal's Supp'g S.M.F. ¶ 16.) The Federal Policy contains a substantively identical provision regarding the method of sharing. (Federal's Supp'g S.M.F. ¶ 11.)

The Federal Policy and the Continental Policy each have a per occurrence limit of $1,000,000. Federal and Continental have already contributed $400,000 each to the settlement of the Underlying Action. Continental and Federal would each be required to contribute $200,000 in addition to the amounts they've already contributed, subject to the SIR of the Federal Policy.

As discussed above, Federal is only obligated to indemnify Auburn for amounts exceeding $250,000, which is more than the remaining amount that Federal would otherwise be required to contribute. Federal has therefore already met and exceeded its obligation. Federal has demonstrated that there is no dispute of material fact and that it is entitled to judgment as a matter of law in its favor on this issue.

Federal also requests that the Court order Continental to reimburse Federal $50,000 for those contributions that exceeded Federal's obligation. Federal, however, did not file a counterclaim in this declaratory judgment action. Nor was Federal ordered by this Court to contribute to the defense. Accordingly, Federal is not entitled to such an order.

## IV.    Conclusion

For the foregoing reasons, the Court grants Federal's motion in part.

The entry is:

Defendant Federal Insurance Company's Motion for Summary Judgment is granted in part. Judgment is entered in Federal's favor regarding Plaintiff's claims for indemnification, contribution, and reimbursement exceeding the amount Federal has already contributed towards the defense and settlement of the underlying action against Auburn Plaza, Inc.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _April 3, 2023_

_____
MaryGay Kennedy, Justice
Maine Superior Court

CONTINENTAL WESTERN
INSURANCE CO.,

       Plaintiff,

    v.

GEORGE BEAM, FEDERAL
INSURANCE CO., and
FRANKENMUTH MUTUAL
INSURANCE CO.,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT
FRANKENMUTH MUTUAL
INSURANCE COMPANY'S
SECOND MOTION FOR
SUMMARY JUDGMENT**

Before the Court is Defendant Frankenmuth Mutual Insurance Company's ("Frankenmuth") Second Motion for Summary Judgment. For the following reasons, the Court grants the motion.

## I.    Background

In this action, Plaintiff Continental Western Insurance Co. ("Continental") seeks a judgment declaring that Frankenmuth and Defendant Federal Insurance Co. ("Federal") are obligated to reimburse Continental for the costs it incurred to defend and indemnify its insured, Auburn Plaza, Inc. ("Auburn"), in a personal injury action brought by George Beam (the "Underlying Action"). (Frankenmuth's Supp'g S.M.F. ¶ 1.)

Auburn owns and operates the Auburn Mall. (Frankenmuth's Supp'g S.M.F. ¶ 2.) In the Underlying Action, Mr. Beam sought to recover damages for injuries he sustained when he fell through a skylight on the roof of the Auburn Mall (the "Accident"). (Frankenmuth's Supp'g S.M.F. ¶ 3.) Mr. Beam alleged that the Accident was caused in

part by Auburn's negligence in failing to remove snow that concealed the skylight and in failing to warn of the skylight's location. (Frankenmuth's Supp'g S.M.F. ¶ 4.)

At the time of the Accident, Auburn was the named insured on two policies issued by Continental: a commercial general liability policy and an excess-umbrella policy. (Frankenmuth's Supp'g S.M.F. ¶ 6.) Continental defended Auburn in the Underlying Action. (Frankenmuth's Supp'g S.M.F. ¶ 7.) Continental and Federal contributed to a settlement of the Underlying Action, reserving their rights to seek reimbursement from each other and from Frankenmuth. (Frankenmuth's Supp'g S.M.F. ¶ 8.)

Mr. Beam was employed by Atlantic Comfort Systems ("Atlantic") as a HVAC service technician. (Frankenmuth's Supp'g S.M.F. ¶ 9.)[1] Atlantic was hired by GNC's facilities services broker, Facility Source, to repair an HVAC system that serviced GNC's store. (Frankenmuth's Supp'g S.M.F. ¶ 18.) GNC was responsible under its lease with Auburn (the "Lease") to maintain the HVAC unit. (Frankenmuth's Supp'g S.M.F. ¶ 19.) Atlantic billed and was paid by Facility Source for the services performed by Mr. Beam on GNC's HVAC unit. (Frankenmuth's Supp'g S.M.F. ¶ 21.)

Atlantic was the named insured on a commercial liability insurance policy issued by Frankenmuth (the "Frankenmuth Policy"). (Frankenmuth's Supp'g S.M.F. ¶ 14.) The Frankenmuth Policy includes an "Additional Insured Endorsement" (the "AIE"), which states:

> Section II—Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

---

[1] Paragraphs 9 and 10 of Frankenmuth's Statement of Material Facts are supported only by citations to the complaint in the Underlying Action, which do not satisfy the requirements of M.R. Civ. P. 56(e), (h)(4).

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

(Frankenmuth's Supp'g S.M.F. ¶ 16; Frankenmuth's Ex. E.)[2] Auburn and Atlantic did not have a written contract for HVAC services, but Auburn had received a Certificate of Insurance from Atlantic that stated that Auburn was an additional insured under the Frankenmuth Policy. (Frankenmuth's Supp'g S.M.F. ¶ 17; Continental's Resp. to Frankenmuth's Supp'g S.M.F. ¶ 17; *see* Continental's Mot. Summ. J. Ex. 10.)

## II.  Legal Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is "material" if it could affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if a factfinder must "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

The court considers the record in the light most favorable to the party objecting to the grant of summary judgment. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646; *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly

---

[2] The language quoted by Frankenmuth in its statement of material facts does not accurately reflect the AIE in Exhibit E. The language above appears as it does in Exhibit E.

controverted." M.R. Civ. P. 56(h)(4). To controvert an opposing party's statement of fact, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

### III. Discussion

Frankenmuth moves for summary judgment on the issue of its duty to indemnify Auburn with respect to the Underlying Action. Frankenmuth argues that Auburn is not an additional insured under the Frankenmuth Policy.

"If the language of an insurance policy is unambiguous, we interpret it in accordance with its plain meaning, but we construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder." *Concord Gen. Mut. Ins. Co. v. Est. of Boure*, 2021 ME 57, ¶ 15, 263 A.3d 167 (quoting *Haskell v. State Farm Fire & Cas. Co.*, 2020 ME 88, ¶ 15, 236 A.3d 458). "An insurance contract is ambiguous if it is reasonably susceptible of different interpretations from the perspective of an average person untrained in either the law or the insurance field in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Bibeau v. Concord Gen. Mut. Ins. Co.*, 2021 ME 4, ¶ 12, 244 A.3d 712 (citations and quotation marks omitted).

As described above, the Frankenmuth Policy covers as an additional insured: "[A]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured." Frankenmuth argues that

neither of the conditions of the AIE—first, the "performing operations" condition and, second, the "agreed in writing" condition—are met with respect to Auburn.

Regarding the first condition, the AIE requires that the named insured, Atlantic, be performing operations for Auburn. The undisputed facts demonstrate that Mr. Beam, on behalf of Atlantic, was performing operations on behalf of Facility Source for GNC at the time of the Accident. There is no evidence in the record of a service agreement between Auburn and Facility Source. However, the Lease requires GNC to maintain the HVAC unit. Maintenance of the HVAC unit benefits Auburn. Strictly construing the provision against Frankenmuth and construing the facts in the light most favorable to Continental, the first condition is arguably met.

As to the second condition, there is no Maine law interpreting this language, and other jurisdictions that have addressed it are split. Frankenmuth and Continental focus much of their arguments on *Pro Con, Inc. v. Interstate Fire and Casualty Co.*, 794 F. Supp. 2d 242 (D. Me. 2011).[3]

Pro Con, Inc. ("Pro Con") was the general contractor for a construction project. *Id.* at 245. Pro Con hired a subcontractor, Canatal Industries, Inc. ("Canatal") who in turn hired a subcontractor, CCS Constructors, LLC ("CCS"). *Id.* at 245-46. The Canatal-CCS subcontract provided: "[Canatal], the General Contractor [Pro Con] and the Owner and other entities as may be reasonably requested are to be included as additional insured under the Commercial General Liability insurance policies as well as under Umbrella Excess Liability." *Id.* at 246 (alterations in original). Analyzing an additional insured

---

[3] Continental also cites cases analyzing language such as "written contract, agreement or permit." *See, e.g., Superior Ice Rink, Inc. v. Nescon Contracting Corp.*, 861 N.Y.S.2d 362, 365 (N.Y. App. Div. 2008). The Court agrees that this language is ambiguous because it is unclear whether "written" modifies agreement and permit in addition to contract. These cases are not helpful to deciding the matter at hand, however, because the provision in the Frankenmuth policy unambiguously requires a writing.

provision identical to the provision in the Frankenmuth Policy, the United States District Court for the District of Maine held that the "agreed in writing" condition was satisfied by the Canatal-CCS subcontract, rendering Pro Con an additional insured under an insurance policy issued to CCS even though Pro Con was not a party to the Canatal-CCS subcontract. *Id.* at 250-53.

The Court finds *Pro Con* unpersuasive for two reasons: (1) the Court disagrees with the Maine District Court's interpretation of the additional insured provision, and (2) even if the Court did agree with *Pro Con*, the facts of this case are distinguishable.

First, the Maine District Court focused its analysis on the language "in writing in a contract or agreement," and concluded that the purported additional insured need not be a party to the writing. To require a written agreement between the named insured and the additional insured, the Maine District Court reasoned, the policy should have read "…agreed in writing in a contract or agreement *with you.*" *Id.* at 251.

This interpretation overlooks the context of that language, which reads "any person or organization . . . *when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured.*" This Court interprets the AIE as unambiguously requiring a written agreement between Atlantic and Auburn to add Auburn as an additional insured. *See State Auto Prop. & Cas. Ins. Co. v. Kin, Inc.*, 588 F. Supp. 3d 870, 875 (N.D. Ill. 2022) (concluding that "when you and such person or organization have agreed in a written contract or written agreement" required direct privity of contract between named insured and additional insured); *Westfield Ins. Co. v. FCL Builders, Inc.*, 948 N.E.2d 115, 118 (Ill. App. Ct. 2011) ("The plain and ordinary meaning of the term 'such person or organization' in this provision is that it refers back to the same person or organization for whom [the named insured] is

performing operations, which was mentioned earlier in the same provision, and it does not encompass any other entity."). No such writing exists.

Second, even if the Court agreed that the AIE does not require direct privity between the named and additional insured, there is no written agreement in this record between any parties to add Auburn as an additional insured. In *Pro Con*, the CCS-Canatal subcontract specifically required CCS to add the general contractor, Pro Con, to its policy. The facts of this case would be analogous to those of *Pro Con* if an agreement between Atlantic and Facility Source or GNC specifically required Atlantic to add Auburn as an additional insured to the Frankenmuth Policy. No such provision exists in any writing in the record.

Nor does the Certificate of Insurance listing Auburn as an additional insured satisfy the writing requirement, as Continental argues. The Certificate of Insurance that Continental cites specifically states that it is not a contract and that it does not confer any rights on the certificate holder or amend the Frankenmuth Policy. (Continental's Mot. Summ. J. Ex. 10.) It cannot, therefore, constitute an agreement in writing that such person or organization be added as an additional insured. *See FCL Builders, Inc.*, 948 N.E.2d at 120-21 (a party cannot rely on a certificate of insurance to establish that it is an additional insured); *cf. Combined Mgmt., Inc. v. Reliance Nat'l Ins. Co.*, No. CV-96-101, 1996 Me. Super. LEXIS 393, at *15 (Dec. 9, 1996) ("A general rule of insurance law states that 'a certificate of insurance is not a contract of insurance but is merely the evidence that a contract has been issued,' and that the validity of any certificate actually provided therefore 'is conditioned upon the issuance and existence of a policy.'" (quoting *Am. Hardware Mut. Ins. Co. v. BIM, Inc.*, 885 F.2d 132, 139 (4th Cir. 1989))); *10 Ellicott Square Ct. Corp. v. Mt. Valley Indem. Co.*, 634 F.3d 112, 122 (2d Cir. 2010) (New York law provides that a certificate of insurance is not a contract to insure).

Frankenmuth has demonstrated that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law on the issue of whether Frankenmuth is obligated to indemnify Auburn with respect to the Underlying Action.

## IV. Conclusion

For the foregoing reasons, the Court grants Frankenmuth's Second Motion for Summary Judgment.

The entry is:

Defendant Frankenmuth Mutual Insurance Company's Second Motion for Summary Judgment is GRANTED. Judgment is entered in Frankenmuth's favor and against Plaintiff on Plaintiff's claims for indemnification, contribution, and reimbursement related to the defense and settlement of the underlying action against Auburn Plaza, Inc.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _April 3, 2023_

_MaryGay Kennedy, Justice_
Maine Superior Court

STATE OF MAINE                                              SUPERIOR COURT
CUMBERLAND, ss.                                            CIVIL ACTION
                                                           Docket No. CV-2018-530

                                              )
CONTINENTAL WESTERN                           )
INSURANCE CO.,                                )
                                              )
            Plaintiff,                        )
                                              )              **ORDER ON PLAINTIFF'S**
      v.                                      )              **MOTION FOR CONTEMPT**
                                              )
GEORGE BEAM, FEDERAL                          )
INSURANCE CO., and                            )
FRANKENMUTH MUTUAL                            )
INSURANCE CO.,                                )
                                              )
            Defendants.                       )


Before the Court is Plaintiff Continental Western Insurance Company's

("Continental") Motion for Contempt. Continental alleges that Defendant Frankenmuth

Mutual Insurance Company ("Frankenmuth") failed to comply with this Court's June 1,

2021 Order on Continental's Motion for Summary Judgment ("June 1 Order"). For the

following reasons, the Court denies Continental's Motion.

I.     **Background**

      This declaratory judgment action arises out of a separate personal injury action

brought by George Beam against Auburn Plaza, Inc. ("Auburn Plaza"), Docket No. CV-

2018-67, in the Androscoggin County Superior Court ("the Underlying Action"). In the

Underlying Action, Mr. Beam alleged that he was injured when he fell through a skylight

in the Auburn Mall while servicing an HVAC unit for General Nutrition Corporation

("GNC"), a tenant of Auburn Plaza. The Court has been advised that the Underlying

Action has settled.

At the time of the accident, Auburn Plaza was insured by Continental, Mr. Beam's employer was insured by Frankenmuth, and GNC was insured by Federal Insurance Company ("Federal"). Continental defended Auburn Plaza in the Underlying Action. In this action, Continental seeks a declaratory judgment concerning Frankenmuth and Federal's duties to defend and indemnify with respect to the Underlying Action.

The June 1 Order granted Continental's Motion for Summary Judgment on the issue of Frankenmuth's duty to defend in the Underlying Action. The Court also ordered Frankenmuth to pay "one half of all defenses costs and attorney's fees associated with its defense of Auburn Plaza, Inc. in the Underlying Action." The Court later denied Federal's Motion for Summary Judgment on the issue of its duty to defend.

Continental has filed a Motion for Contempt, alleging that Frankenmuth failed to reimburse Continental for defense costs.

## II. Legal Standard

M.R. Civ. P. 66 provides the procedures for contempt proceedings. Pursuant to M.R. Civ. P. 66(d)(2), a plenary proceeding for remedial sanctions may be "initiated by the court on its own motion or at the suggestion of a party." M.R. Civ. P. 66(d)(2)(A). "Contempt" may be found where a party has failed "to comply with a lawful judgment, order, writ, subpoena, process, or formal instruction of the court." M.R. Civ. P. 66(1)(2)(A)(ii); *see Edwards v. Campbell*, 2008 ME 173, ¶ 9, 960 A.2d 324.

## III. Discussion

Under Maine law, an insurer's duty to defend is distinct from and broader than the duty to indemnify. *Haskell v. State Farm Fire & Cas. Co.*, 2020 ME 88, ¶ 12, 236 A.3d 458 (quoting *Elliott v. Hanover Ins. Co.*, 1998 ME 138, ¶ 11, 711 A.2d 1310). The only issue presented in Continental's Motion for Summary Judgment was that of Frankenmuth's duty to defend in the Underlying Action. The issues of indemnification and contribution

were not yet properly before the Court when it entered the June 1 Order. Thus, the Court recognizes that it should not have apportioned defense costs in the June 1 Order, and that the portion of the June 1 Order requiring Frankenmuth to immediately reimburse Continental for one half of its defense costs was premature. *See State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 513 A.2d 283, 287 (Me. 1986) ("Where two insurers cover the same risk, it is appropriate that legal fees 'also be shared between them pro rata in proportion to the respective coverage afforded by them to the insured.'" (quoting *Continental Ins. Co. v. Morgan, Olmstead, Kennedy & Gardner, Inc.*, 148 Cal. Rptr. 57, 66 (Cal. Ct. App. 1978))).

After entry of the June 1 Order, the Court denied Federal's Motion for Summary Judgment on its duty to defend, and the Underlying Action settled. This matter is now proceeding to resolution of indemnification and contribution issues. Defense costs will more appropriately be apportioned concurrently with the resolution of those claims. *See State Farm Mut. Auto. Ins. Co.*, 513 A.2d at 287; *Haskell*, 2020 ME 88, ¶ 12, 236 A.3d 458. Accordingly, the Court will not find Frankenmuth in contempt at this time.

## IV. Conclusion

For the foregoing reasons, the Court denies Continental's Motion for Contempt.

The entry is:

Plaintiff Continental Western Insurance Company's Motion for Contempt is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 08/12/2022

MaryGay Kennedy, Justice
Maine Superior Court

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2018-530

)
CONTINENTAL WESTERN )
INSURANCE CO., )
)
Plaintiff, )
)
v. )
)
GEORGE BEAM, FEDERAL )
INSURANCE CO., and )
FRANKENMUTH MUTUAL )
INSURANCE CO., )
)
Defendants. )

**ORDER ON PLAINTIFF'S
MOTION TO COMPEL**

REC'D CUMB CLERKS OFC
FEB 10 '22 PM4:16

Before the Court is Plaintiff Continental Western Insurance Company's ("Continental") Motion to Compel. Continental requests an order compelling Defendant Frankenmuth Mutual Insurance Company ("Frankenmuth") to comply with the terms of this Court's June 1, 2021 Order. For the following reasons, the Court denies Continental's Motion.

I. **Background**

This declaratory judgment action arises out of a separate personal injury action brought by George Beam against Auburn Plaza, Inc. ("Auburn Plaza"), Docket No. CV-2018-67, pending in the Androscoggin County Superior Court ("the Underlying Action"). In the Underlying Action, Mr. Beam alleges that he was injured when he fell through a skylight in the Auburn Mall while servicing an HVAC unit on the roof. At the time of the accident, Auburn Plaza was insured by Continental under a commercial general liability policy and an excess liability policy. Continental has been defending Auburn Plaza in the

Underlying Action. Mr. Beam's employer was insured by Frankenmuth at the time of the accident.

By Order dated June 1, 2021, the Court granted Continental's Motion for Summary Judgment on the issue of Frankenmuth's duty to defend in the Underlying Action and ordered Frankenmuth to pay "one half of all defenses costs and attorney's fees associated with its defense of Auburn Plaza, Inc. in the Underlying Action." Frankenmuth appealed the Court's June 1, 2021 Order to the Law Court. The Law Court dismissed the appeal as interlocutory because this Court has not yet disposed of a claim pending against Federal Insurance Company.

Now, Continental has filed a "Motion to Compel," alleging that Frankenmuth has failed to comply with its obligations to share in defense costs, and seeking an order compelling Frankenmuth to comply with its payment obligations under the June 1, 2021 Order.[1] Continental does not specify under which Rule of Civil Procedure it brings the Motion, and it is not immediately apparent to the Court. However, because the relief sought in the Motion is most akin to relief available in a plenary contempt proceeding, the Court interprets the motion as a motion for contempt seeking remedial measures.[2]

## II. Legal Standard

M.R. Civ. P. 66 provides the procedures for initiating contempt proceedings. Pursuant to M.R. Civ. P. 66(d)(2), a plenary proceeding for remedial sanctions may be "initiated by the court on its own motion or at the suggestion of a party. The motion of a party shall be under oath and set forth the facts that give rise to the motion or shall be

---

[1] In its opposition, Frankenmuth asserts that it is not required to comply with the June 1, 2021 Order because it is not an appealable final judgment. The Court notes that noncompliance with interlocutory orders may also subject a party to sanctions or a contempt proceeding.

[2] Apparently, Continental seeks only compelled compliance with Frankenmuth's payment obligations under the June 1, 2021 Order. Nothing in Continental's Motion suggests that punitive sanctions are sought.

accompanied by a supporting affidavit setting forth the relevant facts." M.R. Civ. P. 66(d)(2)(A).

## III.  Discussion

M.R. Civ. P. 11 states that "[e]xcept when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit." M.R. Civ. P. 11(a). M.R. Civ. P. 66(d)(2)(A) creates an exception to the general rule of M.R. Civ. P. 11. Accordingly, an attorney's signature, alone, does not satisfy the procedural requirements of M.R. Civ. P. 66. *In re Est. of Lake*, 2016 ME 64, ¶ 9, 138 A.3d 483. Because Continental's Motion is signed only by counsel and is unaccompanied by a supporting affidavit, the Court must deny the Motion.

## IV.  Conclusion

For the foregoing reasons, the Court denies Continental's Motion to Compel.

The entry is:

Continental Western Insurance Company's Motion to Compel is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____02/10/2022_____

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 2/11/22

Page 3 of 3

)
CONTINENTAL WESTERN )
INSURANCE COMPANY, )
)
     Plaintiff, )   ORDER ON DEFENDANT FEDERAL
)   INSURANCE COMPANY'S MOTION
     v. )   FOR SUMMARY JUDGMENT
)
GEORGE BEAM, et al., )
)
     Defendants. )

Before the court is Defendant Federal Insurance Company's Motion for Summary Judgment against Plaintiff Continental Western Insurance Company. For the following reasons, the motion is denied.

## I.   Summary Judgment Factual Record

This matter arises out of a personal injury action brought by George Beam against Auburn Plaza, in which Mr. Beam seeks to recover damages for serious injuries he sustained after falling through a skylight on the roof of the Auburn Plaza (the "Underlying Action"). Mr. Beam was on the roof to service an HVAC unit for General Nutrition Corporation ("GNC"), a tenant of Auburn Plaza ("the Mall"). At the time of the incident, Auburn Plaza was insured by Plaintiff Continental Western Insurance Company ("Continental"), and GNC was insured by Defendant Federal Insurance Company ("Federal").

GNC has been a tenant of the Mall since 1991. (Supp'g S.M.F. ¶ 1.) Under the terms of its lease, GNC is contractually obligated to maintain the rooftop HVAC system that services the leased premises. (Supp'g S.M.F. ¶ 12.) Auburn Plaza (as landlord) is charged

1

with the operation, maintenance, and repair of all common areas, and these obligations include snow and ice removal on the roof. (Supp'g S.M.F. ¶¶ 6-9.)

On February 18, 2015, Mr. Beam, an employee of Atlantic Comfort Systems ("ACS"), arrived at the Mall to perform service on GNC's HVAC unit. (Supp'g S.M.F. ¶ 15.) In accordance with ACS's procedures, Mr. Beam signed in at the Mall's office and asked about accessing the unit. (Supp'g S.M.F. ¶ 17.) It was the standard practice of ACS technicians to contact Mall security rather than the individual customer to gain access to the roof. (Supp'g S.M.F. ¶ 18.) An agent of the Mall's security company escorted Mr. Beam to a maintenance room and instructed him that the roof was accessed by a ladder, which in turn was accessible through a latched door. (Supp'g S.M.F. ¶ 19.) While walking on the roof, Mr. Beam stepped on a skylight that was located above a common area of the Mall. (Supp'g S.M.F. ¶ 20.) At the time of the fall, he was not near GNC's leased premises nor its HVAC system. (Supp'g S.M.F. ¶ 21.) He did not see the skylight because it was covered with snow and not visible. (Supp'g S.M.F. ¶ 22.) Mr. Beam fell over 20 feet to the cement floor of the Mall below. (Supp'g S.M.F. ¶ 23.)

On or about May 29, 2018, Mr. Beam filed suit against Auburn Plaza, *George Beam v. Auburn Plaza, Inc.*, Docket No. CV-18-67, pending in the Androscoggin Country Superior Court, alleging that the Mall knew or should have known of the dangerous skylight condition and failed to warn him about it, among other allegations that it breached its duty of care to him. (Supp'g S.M.F. ¶ 25.) On November 13, 2018, Continental filed a Complaint for Declaratory Judgment, seeking a declaration that Auburn Plaza qualifies as an additional insured under GNC's commercial general liability policy with Federal, and that Federal is therefore contractually obligated to provide Auburn Plaza with a defense in the Underlying Action. Federal now moves for summary judgment on all counts alleged against it in Continental's Complaint.

2

Pursuant to its commercial lease with Auburn Plaza, GNC is required to obtain commercial general liability insurance "applicable to the Leased Premises and its appurtenances," and Auburn Plaza must be covered under the policy as an additional insured. (Supp'g S.M.F. ¶ 13-14.) According to GNC's policy with Federal, Lessors of Premises are insureds subject to the following caveats:

> Persons or organizations from whom [GNC] lease[s] premises are insureds, but they are insureds only with respect to the ownership, maintenance or use of that particular part of such premises leased to [GNC] and only if [GNC is] contractually obligated to provide them with such insurance as is afforded by this contract.
>
> However, no such person or organization is an insured with respect to any:
> - Damages arising out of their sole negligence;
> - Occurrence that occurs, or offense that is committed, after [GNC] cease[s] to be a tenant in the premises; or
> - Structural alteration, new construction or demolition performed by or on behalf of them.

(Supp'g S.M.F. ¶ 29.)

In the instant motion, Federal seeks summary judgment on the basis of two provisions in the Lessors of Premises endorsement: first, that Mr. Beam's injuries did not occur "with respect to the ownership, maintenance or use" of the leased premises, and second, that Auburn Plaza's negligence was the sole cause of Mr. Beam's injuries. Federal argues that Auburn Plaza does not qualify as an additional insured in this case, and therefore has no duty to defend Auburn Plaza in the Underlying Action.

## II. Standard of Review

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrate that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821;

3

M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* A plaintiff opposing a summary judgment motion must establish a prima facie case for each element of each of his or her claims. *Tri-Town Marine, Inc. v. J.C. Milliken Agency, Inc.*, 2007 ME 67, ¶ 7, 924 A.2d 1066. The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating."[1] *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III.    Discussion

In its Motion for Summary Judgment, Federal admits that Auburn Plaza is a lessor of premises and, as such, qualifies as an additional insured under GNC's general liability policy pursuant to the Lessors of Premises endorsement. (Def.'s Mot. Summ. J. 8.) It argues, however, that coverage limitations that are part of that endorsement preclude coverage for Auburn Plaza with regard to the Underlying Action. *Id.* Federal makes two arguments to support its position. First, it argues that Mr. Beam's injuries did not occur "with respect to the ownership, maintenance or use" of the leased premises, which is a prerequisite to coverage as an additional insured. Second, Federal asserts that Auburn

---

[1] Each party's statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e). A party's opposing statement of material facts "must explicitly admit, deny or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation." *Stanley v. Hancock Cty. Comm'r*, 2004 ME 157, ¶ 13, 864 A.2d 169.

4

Plaza's negligence is the sole cause of Mr. Beam's injuries, which disqualifies it from coverage pursuant to the plain language of the Lessors of Premises endorsement.

Whether an insurer has a duty to defend is a question of law. *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793. The duty to defend "is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy." *Commercial Union Ins. Co. v. Alves*, 677 A.2d 70, 72 (Me. 1996). "[T]he threshold for triggering an insurer's duty to defend is low." *Irving Oil, Ltd. v. ACE INA Ins.*, 2014 ME 62, ¶ 12, 91 A.3d 594. The Law Court has held that "[r]egardless of extrinsic evidence, if the complaint—read in conjunction with the policy—reveals a mere *potential* that the facts may come within the coverage, then the duty to defend exists." *Cox v. Commonwealth Land Title Ins. Co.*, 2013 ME 8, ¶ 9, 59 A.3d 1280 (emphasis in original). Here, the threshold issue before the court is whether Auburn Plaza qualifies as an "additional insured" under the GNC policy with regard to the incident giving rise to Mr. Beam's complaint.

*a. Ownership, Maintenance or Use of the Leased Premises*

GNC's policy provides that Auburn Plaza, as the lessor of premises, qualifies as an additional insured "only with respect to the ownership, maintenance or use of that particular part of such premises leased to [GNC]." (Supp'g S.M.F. ¶ 29.) In arguing that this provision disqualifies Auburn Plaza as an additional insured in the Underlying Action, Federal emphasizes the location of Mr. Beam's fall. Federal notes that the "Leased Premises," as defined in the Lease, do not include the roof of the Mall, where the injury actually occurred. (Def.'s Mot. Summ. J. 9.) The roof is a common area and GNC has only a non-exclusive license to use it, at all times subject to Auburn Plaza's "exclusive control and management." *Id.* Federal also argues that there is no coverage for Auburn Plaza under the Lessors of Premises endorsement because the Underlying Action does

5

not reference or implicate GNC[2] or the leased premises. (Def.'s Mot. Summ. J. 11.) It asserts that the limiting phrase "but only with respect to" necessitates a connection between the injury and the activities enumerated in the endorsement—the ownership, maintenance, or use of the leased premises—and that the allegations in the Beam complaint demonstrate that no such connection exists. (Def.'s Mot. Summ. J. 13.) Federal concludes that the connection between Mr. Beam's injuries and "that particular part of such premises leased to [GNC]" is a "purely incidental one." (Def.'s Mot. Summ. J. 15.)

In response, Continental argues that Mr. Beam's negligence allegations against Auburn Plaza trigger Federal's duty to defend because Auburn Plaza's exposure in the Beam action relates to the maintenance obligations of GNC's leased premises. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 6.) GNC was required to maintain the rooftop HVAC system and had a license to use the roof for that purpose, and it was in the course of carrying out that maintenance obligation that Mr. Beam was injured. Continental argues that the so-called "incidental" relationship between Auburn's exposure to liability and GNC's leased premises is enough to satisfy the requirements of the endorsement, and that Federal is demanding too strong of a causal relationship. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 12.)

It does not appear that Maine courts have addressed this particular endorsement language. Nethertheless, the fact that Mr. Beam's injuries occurred outside of the parameters of GNC's leased premises has little bearing on whether the injury occurred

---

[2] In its Statement of Material Facts, Plaintiff Continental points out that Mr. Beam does in fact reference GNC twice in his complaint. Paragraph 6 of the underlying complaint states that "GNC called ACS requesting HVAC services for the HVAC system on the rooftop of said Auburn Mall," and Paragraph 8 of the underlying complaint states that "Plaintiff, an invitee of GNC, arrived at Auburn Mall in response to the service call placed by GNC to ACS." (Add. S.M.F. ¶¶ 2-3.)

6

*"with respect to* the ownership, maintenance or use" of the leased premises.[3] As Continental points out in its brief, the broad language of the additional insured endorsement does not restrict coverage to incidents occurring "inside" the leased space. When comparing the allegations in the Beam complaint with the language of the policy, and in light of the low threshold for triggering an insurer's duty to defend under Maine law, the court concludes that there is a possibility that Auburn Plaza's liability arises out of GNC's "ownership, maintenance or use" of the leased premises, and therefore qualifies as an additional insured under GNC's policy with Federal.

Defendant Federal Insurance Company has not demonstrated that, as a matter of law, there is no possibility or construction of Federal's policy language that would preclude a duty to defend Auburn Plaza in the Underlying Action. Summary judgment is denied.

b. *Sole Negligence*

Federal next argues that even if it could be shown that Mr. Beam's injuries arose "with respect to the ownership, maintenance or use" of the leased premises, it has no duty to defend Auburn Plaza because Auburn Plaza's own negligence is the sole cause of Mr. Beams injuries, and GNC's Policy states that organizations from whom GNC leases premises are not insureds "with respect to any . . . [d]amages arising out of their sole negligence." (Supp'g S.M.F. ¶ 29.) In response, Continental notes that no factfinder has concluded that Auburn's conduct was the sole cause of Mr. Beam's injuries. As Continental posits in its reply brief, it is entirely possible that a jury could find Auburn

---

[3] The court is not convinced that the narrow language specifying that the ownership, maintenance, or use must relate to "that particular part of such premises leased to [GNC]" changes this analysis, an argument that Federal raises in its Corrected Reply Brief to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

Plaza not liable or only partly liable for the plaintiff's injuries, precluding the application of the "sole negligence" exception. The court agrees that this is a fact-intensive analysis, and the question of whether Auburn Plaza is solely liable cannot be answered simply by reading Mr. Beam's complaint.

Thus, viewing the evidence in the light most favorable to the nonmoving party, there exists a genuine dispute as to whether Auburn Plaza was solely negligent for Mr. Beam's injuries. Summary judgment is denied on this ground.

## IV.    Conclusion

For the foregoing reasons, Defendant Federal Insurance Company's Motion for Summary Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___3/4/2021___

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 3/24/2021

8

STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss.                          CIVIL ACTION
                                         DOCKET NO. CV-18-530


CONTINENTAL WESTERN
INSURANCE COMPANY,

          Plaintiff
                                         ORDER ON PLAINTIFF'S MOTION
     v.                                  FOR SUMMARY JUDGMENT

GEORGE BEAM, FEDERAL
INSURANCE COMPANY and
FRANKENMUTH MUTUAL
INSURANCE COMPANY

          Defendant

     Before the court is plaintiff Continental Western Insurance Company's ("Continental")

motion for summary judgment against defendant Frankenmuth Mutual Insurance Company

("Frankenmuth"). For the following reasons, the motion is granted.

**I. Summary Judgment Factual Record**

     This declaratory judgment action arises out of a personal injury action brought by George

Beam ("Mr. Beam") against Auburn Plaza, Inc. ("Auburn Plaza"), George Beam v. Auburn Plaza,

Inc., Docket No. CV-18-67, pending in the Androscoggin Country Superior Court. Mr. Beam's

lawsuit (the "Underlying Action") seeks to recover damages for injuries he sustained on February

18, 2015, after falling through a skylight on the roof of the Auburn Mall. (Pl.'s Ex. 1 ¶¶ 8, 15-17.)

Mr. Beam alleges that his injuries were caused by Auburn Plaza's negligent failure to remove snow

that was concealing the skylight, and its failure to warn of, or otherwise mark the location of the

skylight. (*Id.* ¶ 26.)

     The accident occurred while Mr. Beam was on the roof servicing an HVAC unit for General

Nutrition Corporation ("GNC"), a tenant of the Auburn Mall. (Supp.'g S.M.F. ¶ 4.) Pursuant to

1

GNC's commercial lease with Auburn Plaza, GNC was contractually obligated to maintain the rooftop HVAC system that services the leased premises. (*Id.* ¶ 7.) Mr. Beam was an employee of Atlantic Comfort Systems ("Atlantic"). (*Id.* ¶ 2.) Facility Source, a maintenance services broker and one of Atlantic's customers, hired Atlantic to service GNC's HVAC system. (*Id.* ¶¶ 9-10.)

Continental is currently defending Auburn Plaza in the Underlying Action pursuant to its obligation as Auburn Plaza's insurer. (*See Id.* ¶ 23.) According to the terms of GNC's commercial lease with Auburn Plaza, any contractor GNC brings onto the leased premises must carry commercial general liability coverage with limits of $ 3,000,000 and the contractor must designate Auburn as an additional insured. (*Id.* ¶ 4.) Atlantic was insured under a commercial general liability policy issued by Frankenmuth (the "Frankenmuth Policy"). (*Id.* ¶ 15.)

Who qualifies as an additional insured under the Frankenmuth Policy is governed by the terms of the Frankenmuth Policy's Additional Insured Endorsement. (*Id.* ¶ 17.) Continental brought this action against Frankenmuth, among others, seeking a declaratory judgment that Auburn Plaza is an "additional insured" under the Frankenmuth Policy, and that Frankenmuth is obligated to defend and indemnify Auburn Plaza in the Underlying Action. (Compl. ¶ 28.) Frankenmuth moved for summary judgment, arguing that it had no obligation to defend or indemnify Auburn Plaza with respect to the allegations in the Underlying Action. (Supp.'g S.M.F. ¶ 18.) The court denied Frankenmuth's motion for summary judgment because there are several issues of material fact as to whether Auburn Plaza qualifies as an additional insured under the terms of the Additional Insured Endorsement. (Order Def. Frankenmuth Mot. Summ. J. at 7, 9.)

Continental has filed this motion for summary judgment against Frankenmuth claiming that there are no issues of material fact with respect to Frankenmuth's duty to defend Auburn Plaza

2

in the Underlying Action. Frankenmuth opposed the motion and filed a cross-motion for summary judgment of its own.

## III. Standard of Review

A party is entitled to summary judgment when a review of the parties' statements of material facts and the record to which the statements refer demonstrate that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## IV. Discussion

Continental's motion is based on the court's reasoning in denying Frankenmuth's earlier motion for summary judgment. Specifically, the court said that there was an issue of material fact as to whether the Frankenmuth Policy extends to Auburn Plaza. (Order Def. Frankenmuth Mot. Summ. J. at 8-9.) Continental argues that this implies Frankenmuth has a duty to defend Auburn Plaza in the Underlying Action.

3

Whether an insurer has a duty to defend is a question of law. *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793. In a typical coverage dispute, the Court compares the allegations in the underlying complaint with the coverage provided in the insurance policy. *Id.* ¶ 8. "The facts alleged in the [underlying] complaint need not make out a claim that specifically and unequivocally falls within the coverage. Rather, where the events giving rise to the complaint may be shown at trial to fall within the policy's coverage, an insurer must provide the policyholder with a defense."[1] *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 10, 36 A.3d 876 (quotation marks omitted) (citations omitted).

Frankenmuth's opposition to this motion mostly repeats the arguments they put forward on its earlier motion for summary judgment. Frankenmuth argues that none of the requirements of the Additional Insured Endorsement were met, so Auburn Plaza was not an additional insured under the Frankenmuth Policy. The Additional Insured Endorsement reads, in the relevant part:

> Who is an insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. But:
>
> 1. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by:
>
>    a) Your acts or omissions; or
>    b) The acts or omissions of those acting on your behalf in the performance of "your work" for the additional insured
>
> 2. Such written contract or agreement must be:
>    a) Currently in effect or becoming effective during the term of this policy; and
>    b) Executed prior to the "bodily injury," "property damage," or "personal and advertising injury."

---

[1] "[A]n insurer's duty to defend should be decided summarily and in favor of the insured if there exists any legal or factual basis, which could be developed at trial, that would obligate the insurer to pay under the policy." *Mullen v. Daniels*, 598 A.2d 451, 453 (Me. 1991) (quotations omitted) (citation omitted).

4

(Frankenmuth Mot. Summ. J. Supp.'g S.M.F. Ex. D.) The Additional Insured Endorsement would require three findings for there to be coverage in this case: (1) that Atlantic was performing services for Auburn Plaza at the time of the accident; (2) that there was a written contract;[2] and (3) that Mr. Beam's injuries were caused, in whole or in part, by the acts or omissions of either Auburn Plaza or those acting on its behalf in the performance of the work for the additional insured.

The written contract requirement and the scope of the coverage were both litigated on Frankenmuth's motion for summary judgment. The court found that there remained issues of material fact as to both of these requirements and denied the motion. Contrary to Frankenmuth's assertions, nothing has changed in the record to suggest that it has been "confirmed" that no written contract existed between Auburn Plaza and GNC. (Reply Opp. Cross Mot. Summ. J. at 2.) Furthermore, even if there was no written contract between Auburn Plaza and GNC, the requirement could still be satisfied with a written contract between GNC and Atlantic or Facility Source and Atlantic if the contract required Auburn Plaza be named as an additional insured. *See Pro Con*, 794 F. Supp. 2d at 250-53. The court will not duplicate its analysis here. There remain issues of material fact as to the written contract requirement and the scope of the coverage.

Frankenmuth did not argue that Atlantic was not performing services for Auburn Plaza at the time of the accident on its earlier motion for summary judgment. The court did not discuss the issue in its order because the parties did not raise it. Now Frankenmuth argues that because maintenance of the rooftop HVAC system was GNC's responsibility under the lease, Atlantic

---

[2] As discussed in the court's order on Frankenmuth's motion for summary judgment, the written contract need not be between Auburn Plaza and Atlantic. A written contract between the insured party and its subcontractor requiring that another party be named as an additional insured also satisfies the written contract requirement. *Pro Con, Inc. v. Interstate Fire & Casualty Co.*, 794 F. Supp. 2d 242, 250-53 (D. Me. 2011).

was not performing work for Auburn Plaza when the accident occurred. (*See* Opp. at 5.) Continental argues that even though Atlantic did not contract directly with Auburn Plaza it was still performing services for Auburn Plaza because it was servicing the HVAC system to satisfy GNC's obligation to Auburn Plaza under the lease. (Opp. Cross Mot. Summ. J. at 3.)

The Additional Insured Endorsement does not clarify what it means to perform operations for a person or organization. However, in *Pro Con, Inc. v. Interstate Fire & Casualty Co.*, 794 F. Supp. 2d 242, 252 (D. Me. 2011), neither party contested, and United States District Court for the District of Maine held, that a subcontractor was performing work for a general contractor for the purposes of classifying the general contractor as an additional insured even though there was no direct relationship between them. Auburn Plaza is one more degree of separation away from Atlantic than a general contractor, but the work performed by Atlantic was still done to satisfy contractual duties owed to Auburn Plaza just as a subcontractor performs work to satisfy contractual duties owed to a general contractor. "Any ambiguity must be resolved in favor of a duty to defend." *Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 609 (Me. 1990). The court concludes, based on the undisputed facts, that Atlantic was indirectly performing operations for Auburn Plaza within the meaning of the Additional Insured Endorsement when the accident occurred.

To reiterate: "an insurer's duty to defend should be decided summarily and in favor of the insured if there exists any legal or factual basis, which could be developed at trial, that would obligate the insurer to pay under the policy." *Mullen*, 598 A.2d at 453. Genuine issues of material fact exist when the facts in the record would require the factfinder to choose between competing versions of the truth. *Mitchell*, 2011 ME 133, ¶ 10, 36 A.3d 876. The fact that there are issues of material fact as to whether Auburn Plaza is covered as an additional insured under

6

the Frankenmuth Policy means, therefore, that one version of the truth that could be developed at trial would find coverage under the policy. Summary judgment against Frankenmuth on the duty to defend must be granted. Frankenmuth is therefore liable for half of the defense costs and attorney's fees associated with the defense from the date that it received a tender letter from Continental requesting that it agree to defend and indemnify Auburn. *See Anderson v. Virginia Sur. Co.*, 985 F. Supp. 182, 193 (D. Me. 1998).

The entry is

> Plaintiff Continental Western Insurance Company's Motion for Summary Judgment is GRANTED. Defendant Frankenmuth Mutual Insurance Company is hereby ORDERED to pay Continental Western Insurance Company one half of all defense costs and attorney's fees associated with its defense of Auburn Plaza, Inc. in the Underlying Action.

> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: June 1, 2020

Mary Gay Kennedy
Justice, Superior Court

7



STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-530

CONTINENTAL WESTERN
INSURANCE COMPANY,

    Plaintiff,

    v.

GEORGE BEAM, FEDERAL
INSURANCE COMPANY, and
FRANKEMNUTH MUTUAL
INSURANCE COMPANY,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANT
FRANKENMUTH MUTUAL
INSURANCE COMPANY'S
MOTION FOR SUMMARY
JUDGMENT

Before the Court is Defendant Frankenmuth Mutual Insurance Company ("Frankenmuth's") Motion for Summary Judgment against Plaintiff Continental Western Insurance Company ("Continental"). For the following reasons, Frankenmuth's Motion is denied.

## I.   Summary Judgment Factual Record

The subject of this declaratory judgment action arises out of a separate personal injury action brought by George Beam ("Mr. Beam") against Auburn Plaza, Inc. ("Auburn Plaza"), *George Beam v. Auburn Plaza, Inc.,* Docket No. CV-18-67, pending in the Androscoggin Country Superior Court. Mr. Beam's lawsuit (the "Underlying Action") seeks to recover damages for injuries he sustained on February 18, 2015, after falling through a skylight on the roof of the Auburn Mall.[1] (Supp.'g S.M.F. ¶ 3.) Mr. Beam alleges that his injuries were caused by Auburn Plaza's negligent failure to remove snow that

---

[1] Frankenmuth failed to attach as an exhibit Mr. Beam's underlying complaint against Auburn Plaza. Because Continental attached a copy to its Opposition, the Court will consider Frankenmuth's statements that cite to Mr. Beam's complaint.

For Plaintiff: Doreen Connor, Esq.

For Defendants:     REC'D CUMB CLERKS OF
David Marchese, Esq. (for George Beam)
John Wall, Esq. & Gregory Fleming, Esq. (for Federal Ins Co)
Martica Douglas, Esq. (for Frankenmuth Mutual Ins Co)

was concealing the skylight, and its failure to warn of, or otherwise mark the location of the skylight.[2] (Supp.'g S.M.F. ¶ 5.)

The accident occurred while Mr. Beam was on the roof servicing an HVAC unit for General Nutrition Corporation ("GNC"), a tenant of the Auburn Mall. (Supp.'g S.M.F. ¶ 7.) Pursuant to GNC's commercial lease with Auburn Plaza, GNC was contractually obligated to maintain the rooftop HVAC system that services the leased premises. (Add. S.M.F. ¶ 5.) Mr. Beam was an employee of Atlantic Conform Systems ("Atlantic"). (Supp.'g S.M.F. ¶ 6.) Facility Source, a maintenance services broker and one of Atlantic's customers, hired Atlantic to service GNC's HVAC system. (Supp.'g S.M.F. ¶¶ 8-10.) On the day of the accident, Mr. Beam was dispatched by Atlantic, and Atlantic billed Facility for the services Mr. Beam provided. (Supp.'g S.M.F. ¶¶ 11-12; Add. S.M.F. ¶ 2.) Atlantic had been servicing the GNC HVAC system at the Auburn Mall for several years preceding Mr. Beam's accident, and the system is typically serviced four to six times a year. (Add. S.M.F. ¶¶ 7, 10.)

At the time of the accident, Auburn Plaza was insured by Continental under both a commercial general liability policy and an excess liability policy.[3] (Supp.'g S.M.F. ¶ 15.) Continental is currently defending Auburn Plaza in the Underlying Action pursuant to

---

[2] Continental, in its Response to Frankenmuth's Statement of Material Facts, attempts to partially admit Paragraph 5. The Maine Rules of Civil Procedure prohibit such parsing. An admission must begin with the designation "'[a]dmitted' . . . and shall end with such designation." M.R. Civ. P. 56(h)(2). If a party does not expressly admit a fact, then the party must controvert it through a denial or a qualification. *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶ 18, 864 A.2d 169.

[3] Paragraphs 2, 15, 16 and 21 of Frankenmuth's Statement of Material Facts are not properly supported by references to the record considering the Court is not in receipt of Defendant's Request for Admission – the record to which these statements refer. *See* M.R. Civ. P. 56(e). In the absence of specific record references, the proffered facts are not properly before the court. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653. The court is neither required nor permitted to independently search a record to find support for facts offered by a party. *Id.*

its obligation as Auburn Plaza's insurer. (Supp.'g S.M.F. ¶ 16.) According to the terms of GNC's commercial lease with Auburn Plaza, any contractor GNC brings onto the leased premises must carry commercial general liability coverage with limits of $ 3,000,000 and the contractor must designate Auburn as an additional insured.[4] (Add. S.M.F. ¶ 4.) Atlantic was insured under a comprehensive general liability policy issued by Frankenmuth (the "Frankenmuth Policy"). (Supp.'g S.M.F. ¶ 17.)

If Facility required Atlantic to name a third party as an additional insured on its policy, Facility would provide the proper verbiage, and Atlantic would then ask its insurance agent to issue a renewal of the certificate of insurance. (Add. S.M.F. ¶ 11.) It is Atlantic's standard practice to arrange for its insurance agent to send certificates of insurance to the owner of the premises serviced by its technicians, and it had previously issued certificates designating Auburn Plaza as an "additional insured." (Supp.'g S.M.F. ¶ 19; Add. S.M.F. ¶ 10.) Mr. Beam would not have been permitted to access the roof without a certificate of insurance confirming that Auburn Plaza was named as an additional insured on Atlantic's policy with Frankenmuth. (Add. S.M.F. ¶ 6.)

A copy of the Certificate of Insurance from Atlantic's insurance agent and issued to Auburn Plaza has been provided and attached as Defendant's Exhibit E. (Supp.'g S.M.F. ¶ 20.) The additional insured's language on the 2015 Certificate of Insurance issued to Auburn Plaza would have been dictated by an earlier agreement between Atlantic and Facility. (Add. S.M.F. ¶ 14.)

---

[4] Frankenmuth did not reply to Continental's Additional Statement of Material Facts. Consequently, those Additional Statement of Material Facts that are properly supported by record references have been admitted. *See* M.R. Civ. P. 56(h)(4) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").

Mr. Beam has been receiving workers' compensation benefits from Atlantic as a result of his injuries; in turn, Atlantic's workers compensation insurance has increased by 240%. (Supp.'g S.M.F. ¶¶ 21-22.) This modification to Atlantic's insurance has disqualified it from bidding on certain jobs. (Supp.'g S.M.F. ¶ 23.)

Continental brought this action against Frankenmuth, among others, seeking a declaratory judgment that Auburn Plaza is an "additional insured" under the Frankenmuth Policy, and that Frankenmuth is obligated to defend and indemnify Auburn Plaza in the Underlying Action. (Def.'s Mot. Summ. J. 3.)

## II.    Standard of Review

A party is entitled to summary judgment when a review of the parties' statements of material facts and the record to which the statements refer demonstrate that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c).   A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

Whether an insurer has a duty to defend is a question of law. *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793. In a typical coverage dispute, the Court compares the allegations in the underlying complaint with the coverage provided in the insurance policy. *Id.* ¶ 8. "The facts alleged in the [underlying] complaint need not make out a claim that specifically and unequivocally falls within the coverage. Rather, where the events giving rise to the complaint may be shown at trial to fall within the policy's coverage, an insurer must provide the policyholder with a defense."[5] *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 10, 36 A.3d 876 (quotation marks omitted) (citations omitted). Here, however, the threshold issue before the Court is whether Auburn Plaza qualified as an "additional insured" under the Frankenmuth Policy.

The dispute centers around Section II, of the Frankenmuth Policy, entitled "Who Is An Insured," which provides:

> Who is an insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. But:
>
> 1. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in party, by:
>    a. Your acts or omissions; or
>    b. The acts or omissions of those acting on your behalf;
>    in the performance of "your work" for the additional insured; and
> 2. Such written contract or agreement must be:
>    a. Currently in effect or becoming effective during the term of this policy; and

---

[5] "[A]n insurer's duty to defend should be decided summarily and in favor of the insured if there exists any legal or factual basis, which could be developed at trial, that would obligate the insurer to pay under the policy." *Mullen v. Daniels*, 598 A.2d 451, 453 (Me. 1991) (quotations omitted) (citation omitted).

b. Executed prior to the "bodily injury", "property damage", or "personal and advertising injury."

(Def.'s Ex. D.) In its Motion, Frankenmuth asserts that Auburn Plaza does not qualify as an additional insured because (1) Auburn Plaza and Atlantic never entered into a written contract with Auburn Plaza whereby Atlantic agreed that Auburn Plaza would be added as an additional insured; and (2) coverage for an additional insured is limited to injuries that were caused in whole or in part by the acts or omissions of the insured (Atlantic), or persons acting on its behalf (Mr. Beam). (Def.'s Mot. Summ. J. 5.)

A. *Written Contract or Agreement Requirement*

With regards to the written contract requirement, the record contains evidence of a Certificate of Insurance issued by Frankenmuth, at Atlantic's request, naming Auburn Plaza as an additional insured. (Supp.'g S.M.F ¶ 20; *see* Def.'s Ex. E.) The Certificate of Insurance appears to have been in effect at the time of Mr. Beam's accident. The record demonstrates that Atlantic provided these certificates in the past, consistently designating Auburn Plaza as an additional insured under its policy. (Add. S.M.F. ¶ 10; Pl.'s Opp'n to Def.'s Mot. Summ. J. 6.)

Continental denies Paragraph 14 of Frankenmuth's Statement of Material Facts that "Atlantic Comfort Systems has not had a contractual relationship with Auburn Plaza, Inc." by referencing the Certificate of Insurance. (Supp.'g S.M.F. ¶ 14; Opp. S.M.F ¶ 14.) There is no other evidence of a written agreement between the parties. Nonetheless, even if the Certificate of Insurance is insufficient to satisfy the written contract requirement, as Frankenmuth suggests, an additional insured's endorsement does not necessarily require privity between the party seeking additional insured status and the named insured. *See Pro Con, Inc. v. Interstate Fire & Casualty Co.*, 794 F. Supp. 2d 242, 250-53 (D. Me. 2011). In *Pro Con, Inc.*, the United States District Court for the District of Maine held that a written

contact between the insured party and its subcontractor requiring that another party be named as an additional insured satisfies the written contract requirement.[6] *Id.* Similarly, the facts presented here demonstrate that either a contract between Atlantic and Facility, or between Atlantic and GNC, existed requiring that Atlantic name Auburn Plaza as an additional insured. (Add. S.M.F. ¶¶ 4, 6, 8-11, 13.) The evidence suggests that GNC's was contractually obligated to name Auburn as an additional insured on any contractor policy; its lease provided that "[a]ll policies evidencing Tenant's Insurance shall specify Tenant, Landlord . . . as additional insureds." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 5.) Furthermore, Atlantic's CEO, Mark Tuller, testified that Mr. Beam would not have been allowed to access the roof without a certificate of insurance confirming that Auburn Plaza was an additional insured under its policy. (Add. S.M.F. ¶ 6.)

Thus, viewing the evidence in the light most favorable to the nonmoving party, the Court concludes that that there exists a genuine dispute as to whether the written contract or agreement requirement is satisfied.


*B. Scope of Coverage*

Frankenmuth next argues that regardless of whether the written contract or agreement requirement is satisfied, coverage only extends to liability for bodily injuries "caused, in whole or in part" by Atlantic's or Mr. Beam's acts or omissions in the performance of its work for the additional insured. (Mot. Summ. J. 7-8.) Frankenmuth

---

[6] The court emphasized that the policy did not say "under written contract *with such additional insured*" or "*with you*" or "*with each other*" Rather, as in this case, the policy stated "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in *a contract or agreement* that such person or organization be added as an additional insured on your policy." *Pro Con Inc.,* 794 F. Supp. at 251.

references Mr. Beam's Complaint, which alleges that his injuries were caused solely by Auburn Plaza's negligence. (Supp.'g S.M.F. ¶ 5.) In Continental's reply, it asserts that, despite the allegations in the Underlying Action, it may be established at trial that Mr. Beam and/or Atlantic were comparatively at fault. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 10.)

In interpreting similar "in whole or in part" policy language, the United States District Court for the District of Maine held that coverage for additional insureds can extend to injuries "attributable in part to acts or omissions by both the named insured *and* the additional insured." *Pro Con*, 794 F. Supp. 2d at 256 (emphasis in original). In *Pro Con, Inc.*, the policy language at issue involved an additional insured clause limiting liability to claims "caused, in whole or in part" by the insured's own acts or omissions. *Id.* at 254. In that case, an employee of the named insured was working at a jobsite when he slipped and fell. *Id.* at 257. In the underlying action, he alleged that Pro Con – the general contractor named as an additional insured – was negligent in maintaining the premises in a safe condition. *Id.* The court held, however, that "there also is certainly the potential that facts might be developed at trial that would result in the fact finder determining that [the plaintiff's] injuries were caused, at least in part by, the acts or omissions of [the named insured] (or its agents) . . . ." *Id.* Likewise, Continental contends that it may be established at trial that the accident was at least in part attributable to Mr. Beam's or Atlantic's own negligence, for example, by failing to investigate the presence of skylights on a roof that Atlantic had serviced in the past. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 10.) In light of the requirement that insurance policies be read against the insurer, and "[a]ny ambiguity must be resolved in favor of a duty to defend," *Mass Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 609 (Me. 1990), the inference that Mr. Beam

was at least in part at fault for causing his own injuries is sufficient to raise a genuine issue of material fact as to whether Frankenmuth's policy extends to Auburn Plaza.

Viewing the evidence in the light most favorable to the nonmoving party, the Court concludes that there exists a genuine dispute as to whether Auburn Plaza falls within the scope of Frankenmuth's additional insured endorsement.

## IV. Conclusion

For the foregoing reasons, Defendant Frankenmuth Mutual Insurance Company's motion for summary judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _Aug 28, 2020_

MaryGay Kennedy, Justice
Maine Superior Court

**Entered on the Docket: 8/31/2020**